UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: <u>01-325-CIV-HUCK/SORRENTINO</u>

RANDY WEAVER,                    ]

     Plaintiff,              ]

v.                               ]

                            ]

JAMES MEEHAN, Et, Al.,.          ]

     Defendants.             ]

_____/

PLAINTIFF WEAVER'S DECLARATION OPPOSING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

COMES NOW, the Plaintiff, Randy Weaver, filing pro se,
does hereby file with this Court the Plaintiff's declaration
opposing Defendant's motion for Summary Judgment, pursuant
to Rule 56, Fed. R. Civ. P.

    Plaintiff states that the facts of this case, along with
the attached exhibit's clearly establish that there "are genuine
issue's of material facts", and as a matter of law, the plaintiff
is entitled to judgment in plaintiff's favor, and in support
thereof, the plaintiff would show the Court as follows:

**STATEMENT OF THE CASE**

    In the plaintiff's First Amended Complaint, filed with
the Court on Feburary 28,2001 [1] the plaintiff filed a <u>BIVENS</u>



action, alleging that on June 22,2000 defendant's MEEHAN and
GLOETZNER had illegally seized the plaintiff in violation of
the plaintiff's constitutional rights as stated in the Fourth
Amendment of the United States Constitution. Plaintiff additionally
claimed that defendant's MEEHAN and GLOETZNER later returned
to the plaintiff's residence and did illegally seize personal
property belonging to this plaintiff.

In the same action, the plaintiff also alleged that the
defendants' did physically assault the plaintiff, who was a
"pretrial detainee", once again, violating the plaintiff's civil
and constitutional rights as stated by the Fourth, Eighth, and
Fourteenth Amendment's of the United States Constitution. Plaintiff
claimed and claims that defendant GLOETZNER did physically assault
this plaintiff on Three occasions on June 22,2000 while inside
the Federal Courthouse in Fort Lauderdale, Florida and that
defendant MEEHAN not only failed to intervene to prevent said
unlawful assault by his partner (defendant Gloetzner), but that
defendant MEEHAN positioned himself in a way to act as a "look-
out" to see if anyone was coming.

This Court erroneously stayed [2] the plaintiff's <u>Bivens</u>
action due to the plaintiff getting indicted some Ten-Months
after the plaintiff had begun said civil action [3]. The plaintiff
had filed a motion with the District Court in Fort Lauderdale,

---

1. See Document #4(Plaintiff's Amended Bivens Complaint) on
file in these proceedings.
2. See Document #21(Preliminary Report)on file in these proceedings.
3. See Attached Exhibit One (filed in Dist. Court day after
incident).

Florida on June 29,2000 [4]. The day following the plaintiff getting assaulted.

In any event, the Court, Honorable District Court Judge Paul C. Huck adopted the magistrate's recommendation, and issued an Order on July 27,2001 [5].

On June 13,2002 the plaintiff was found guilty of Assaulting. Impeding, or Interfering with defendant GLOETZNER in connection with the June 28,2000 incident at the Fort Lauderdale Federal Courthouse [6]. The plaintiff filed an appeal in that case, and that conviction is the subject of litigation before the Eleventh Circuit Court of Appeals [7].

On July 3,2002 Magistrate Judge Sorrentino issued a Report and Recommendation, recommending that the stay now be lifted and the case be re-opened as to defendant's MEEHAN and GLOETZNER regarding the June 28,2000 assault to the plaintiff [8].

On October 23,2002 Magistrate Judge Sorrentino issued an Order regarding pretrial proceedings by a pro se plaintiff [9]. The Order at paragraph One instructed the plaintiff to file all motion's relating to discovery by December 20,2002. On December 4,2002 the plaintiff filed numerous discovery motion's in this matter [10]. Additionally, on December 1,2002 the plaintiff also notified the defendants' counsel of record, Mr. Charles S. White, A.U.S.A., of the plaintiff's new address. The plaintiff also filed a copy of all discovery motion's with this Court.

---

4. See Attached Exhibit Two (Copy of notice filed by the plaintiff).
5. See Document #23(Order Adopting Recommendation)on file in these proceedings.
6. See Attached Exhibit Three (Copy of Jury Form).
7. See Attached Exhibit Four (Copy of Criminal Notice of Appeal).

Included in the Magistrate's Order on October 23,2002 the Court advised the plaintiff at paragraph Two that any amendments or additional defendants must be filed by January 3,2003. On December 31,2002 the plaintiff filed with the Court his Second Amended Complaint with Motion For Leave, pursuant to Rule 15 and 20, Fed. R. Civ. Proc. The plaintiff's Second Amended Complaint now named Thirty-Three defendants, and consisted of Seventy-Two pages [11].

Appearently, even though counsel for the defendant's knew the plaintiff's new address, counsel kept sending all motion's to the plaintiff's old address(Federal Detention Center). Plaintiff asserts that this is a deliberate attempt by counsel to sabotage any efforts or challenges to motions filed by counsel for defendants.

Evidence of this fact is that the plaintiff never received the defendant's motion for summary judgment along with the defendant's declaration's until January 10,2003, even though said document's were stamped filed by the Court on December 20,2003 [12]. Included with the defendant's motion for summary judgment and declaration's was a copy of defendant's motion to Stay Discovery in this matter. Once again, filed on December 20,2002 and never received by the plaintiff until January 10,2003. On December 31,2002 plaintiff filed a motion to amend complaint naming now Thirty-Three defendants.

---

8. See Document #32 (Report)on file in these proceedings. United States District Court Judge Paul Huck issued an order adopting the Magistrate's recommendation's on July 19,2002. See Document #38 (Order adopting Preliminary Report)on file in these proceedings.
9. See Document #54 (Order scheduling pretrial proceedings)on file in these proceedings.
10. See Discovery Motion's by plaintiff on file in these proceedings.
11. See Second Amended Complaint and Motion for Leave filed in these proceedings.

## I. CONCISE STATEMENT OF MATERIAL FACTS AS TO
## WHICH THERE DOES EXISTS GENUINE ISSUES TO BE TRIED

1.The plantiff incorporates his Second Amended complaint
outlining in detail the facts regarding the plaintiff's allegations
and files the attached exhibit's in support of plaintiff's opposition
to defendant's motion for summary judgment.

2. The defendant's assert through counsel, four different
argument's in support of their motion for summary judgment.
The plaintiff asserts that the defendants' claims are misguided
and unsupported by case law.

3. The defendant's argue that:(1)the plaintiff has failed
to allege facts sufficient to supprt any constitutional claim
against the defendants in their "personal capacity";(2) that
the plaintiff has failed to file for Administrative claims under
the Federal Tort Claims Act (herein F.T.C.A.), or any other
administrative complaint with the U.S. Marshals' Service. The
defendants assert that because the plaintiff didn't file for
an "administrative remedies", the Court lacks subject matter
jurisdiction over the claims against defendants MEEHAN and GLOETZNER
in their "individual capacities";(3) that GLOETZNER [needed
to apply force] in order to assure that the plaintiff complied
with his "proper custodial orders". Defendants assert that the
plaintiff resisted the Deputy Marshals' efforts to place him
in handcuffs, that plaintiff allegedly taunted the defendants'
by calling them various names and allegedly threatening to beat

---

12. See Exhibit Five (Photocopy of envelope document's arrived
in).

the defendants up, and that the plaintiff had allegedly spit in defendant GLOETZNER'S face, and allegedly headbutted defendant GLOETZNER. The defendant's further assert that this plaintiff had "minor injuries" and that defendants' allegedly only used that amount of force necessary to subdue the plaintiff, restore order, and maintain discipline;(4)finally, the defendants' assert that their actions in allegedly restraining and subdueing the plaintiff were clearly constitutional, and they (defendants) reasonably believed that their action were lawful.

The plaintiff asserts that each of the Four arguments by the defendants must fail as the attached documents will clearly support.

The defendants assert in paragraph One, footnote Two, that the plaintiff was arrested on June 22,2000 pursuant to a Federal Arrest Warrant issued from the District of South Carolina. Said warrant was based on a "complaint" filed in Greenville, South Carolina accusing the plaintiff of violating his probation [14]. Federal Rules of Criminal Procedure, Rule 4 governs the issuance of a Federal Warrant for Arrest based upon the filing of a " COMPLAINT ". Federal Rules of Criminal Procedure, Rule 4 states in pertinent part:

> "The warrant shall be signed by the magistrate
> Judge and shall contain the name of the defendant
> or,, if the defendant's name is unknown, any name
> or description by which the defendant can be
> identified with reasonable certainty. It shall
> describe the offense charged in the complaint.

Fed.R.Crim.Proc. Rule 4(c)(1)

---

14. See Attached Copy of Warrant For Arrest from District of South Carolina that plaintiff was arrested on.

-6-

The plaintiff's argument is clearly obvious, in that, said warrant that defendant's MEEHAN and GLOETZNER arrested the plaintiff on failed to meet the statutory requirement of being signed by a magistrate judge, thereby, making the warrant the plaintiff was arrested on "facially invalid". Not only did said warrant fail to meet this statutory requirement, but the warrant is void of any judicial officer's signature altogether.

The Fourth Amendment of the United States Constitution states in pertinent part:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S.C.A. Const. Amend. 4

Plaintiff claims that the defendants further violated the plaintiff's constitutional right to be free from "unlawful search and seizure" when the defendants' failed to "knock and announce" their purpose and authority as required by Title 18, United States Code, Section §3109, when defendants' kicked in the plaintiff's closed and locked bedroom door. The "Knock and Announce" requirement states in pertinent part:

> "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. §3109.

Further, when the defendant's first arrived at the plaintiff's residence, defendants' displayed their firearms to Ms. Vicki Newson and asked her for consent to search [15]. This type of entry by the defendant's at 6:30 a.m. clearly amounted to "Coerced consent", and would clearly have caused fear and apprehension in Ms. Newson, when confronted by Two individuals wearing street clothes and claiming to be law enforcement officer's, and displaying their weapons while asking Ms. Newson if she minded if they come in and search.

Plaintiff claims that based upon the supporting document's, there are genuine issue's of material facts regarding the June 22,2000 incident that would support a trial on this issue.

Paragraph Seven through Eleven of the defendant's motion for Summary Judgment relates to the defendant's version of what transpired on the 28th day of June,2000. Before the plaintiff begins his argument in reference to these claims by the defendant's, the plaintiff would remind the Court, that defendant's MEEHAN and GLOETZNER have made sworn declaration's as to their claims under "penalty of perjury".

As such, the defendant's have sworn that their version's of the June 28,2000 incident is the truth. The plaintiff would move the Court to act accordingly then based not only on the plaintiff's response, but upon the exhibit's attached in this matter. The plaintiff assert's that this is the defendant's

---

15. See Attached Copy( Statement taken by private investigator regarding Ms. Newson's recollection of the June 22,2000 arrest of the plaintiff). See EXHIBIT SIX.

Third version of the incident's of June 28,2000. The plaintiff states as follows:

On June 28,2000 defendant James MEEHAN submitted a report regarding the June 28,2000 incident [16], This report was written on June 28,2000 immediately following the incident. One could reasonably assume that the "report", was the defendant's most accurate recollection as to what he allegedly saw. When one compare's the June 28,2000 report with defendant MEEHAN'S sworn declaration done on the 19th day of December,2002, it's clearly obvious that defendant MEEHAN has changed his version of what he wrote in his June 28,2000 report.[It should be noted that the defendant's have failed to provide discovery. That discovery would prove that records show yet another version that defendant MEEHAN claimed].

This defendant has testified that he is trained in writing report's, but yet, he (MEEHAN) has provided Three different version's of the June 28,2000 incident. Therefore, there are "genuine issue's of material facts" in reference to the June 28,2000 incident, and a jury couls easily conclude due to the different version's claimed by defendant MEEHAN, that defendant MEEHAN has fabricated his claims in an attempt to protect himself and defendant (partner) GLOETZNER from this civil action.

When a civil plaintiff establishes that the defendant's have committed perjury, and conspired to testify falsely, the plaintiff  would clearly prevail in said matter. The plaintiff

---

16. See Attached EXHIBIT SEVEN (Copy of original statement
    made by defendant MEEHAN on June 28,2000).

states that the statement's of this defendant preclude the
Court from granting Summary Judgment to this defendant, regarding
the June 28,2000 assault to the plaintiff.

On June 28,2000 defendant Michael GLOETZNER submitted
a report [17], describing his version of the incident on June
28,2000. Clearly, this report was written on June 28,2000 immediately
following the incident. One could reasonably assume then that
the "report", was defendant GLOETZNER'S most accurate recollection
as to what he allegedly saw. When one compare's the June 28,2000
report with defendant GLOETZNER'S sworn declaration done on
the 19th day of December,2002, it's so clearly blatant that
defendant GLOETZNER has attempted to fabricate his version
of the June 28,2000 incident to protect himself and defendant
(partner) MEEHAN from this civil action.

Additionally, in reference to this defendant's declaration
as compared to another version he stated at trial, defendant
GLOETZNER now attempts to convince this Court that the plaintiff
has allegedly broke his own shoulder, in what defendant GLOETZNER
claims, by rolling off a "top bunk", and that the plaintiff
allegedly "paid another inmate to break the plaintiff's nose".

Once again, the plaintiff reminds the Court that these
declaration's were made under penalty of perjury and would
ask the Court to address these matter's accordingly. Unknown
to the defendant's, the plaintiff, using the Freedom of Information
and Privacy Act, 5 U.S.C.§§552,552a respectively, has obtained
all medical records from the Federal Detention Center/Bureau
of Prison's. Not one medical record reflects these absolutely

-10-

absurd claims by defendant GLOETZNER, of the plaintiff self-inflicting or even attempting to self-inflict these injuries.

On the contrary, the records reflect that the plaintiff was assaulted by defendant GLOETZNER, and the records reflect injuries consistent with those alleged by this plaintiff. Additionally, the plaintiff thinks the Court should be aware of another incident where the defendant's attempted to get inmate's to lie for them about how the plaintiff obtained these injuries.

During the plaintiff's criminal trial, discovery was provided and the plaintiff learned that Two inmate's (See Amended Complaint, defendant's Harold NEAL and James GURGIS), provided yet another version of exactly how it was the plaintiff acquired his injuries. One version was that the plaintiff had "intentionally tripped, landing on his face", but breaking only his nose, while handcuffed behind his back and in schackles, and the other alleged version of the plaintiff's injuries dealt with the plaintiff's right shoulder.

In that version, it was stated that the plaintiff supposedly "dove at the defendant's and the defendant's moved out of the way" and the plaintiff ended up flying into the holding cell bars, breaking his (plaintiff's) shoulder.

Medical records attached to this motion [18], clearly establish that the injuries the plaintiff received occurred when the

---

17. See Attached Copy( Original statement of defendant GLOETZNER, as reported on June 28,2000--EXHIBIT EIGHT).
18. See Medical Records Attached (Report on plaintiff's nose injury, and surgery report on plaintiff's shoulder injury).

plaintiff was assaulted by defendant GLOETZNER while inside
the Federal Courthouse in Fort Lauderdale, Florida on June
28,2000. Further, medical records also show that the plaintiff
suffers from Epilepsy, and as standard procedure within the
Federal Bureau of Prison's, the plaintiff has not been placed
on any "top bunk", but was assigned a "lower bunk permit" to
prevent the plaintiff from falling off a "top bunk" in the
event of the plaintiff having a seizure.

WHEREFORE, the plaintiff states that there are clearly
genuine issue's of material facts that are self-evident from
the defendants own statements (version's), of the June 28,2000
incident, and as such, these issue's can not be determined by
the Court, and must be presented to a "trier of facts".

Paragraph Twelve through Fourteen of the defendant's motion
for Summary Judgment deals with the claims of defendant GLOETZNER
allegedly receiving medical treatment from the duty nurse Susan
CRIMMINS (See Second AMneded Complaint, therein defendant CRIMMINS).
Plaintiff states that the report filed by duty nurse Susan CRIMMINS
on June 28,2000 immediately after she treated the plaintiff
is different from her SWORN DECLARATION filed on the 19th day
of December,2002.

The plaintiff draws the Court's attention to the report
filed on June 28,2000 by Susan CRIMMINS (See EXHIBIT NINE.)[19].
In that report there is a section entitled "Name(s) of other's
involved". As this Court will note, according to her (CRIMMINS)

───────────────────────────

19. See Attached Copy (Original Report of defendant CRIMMINS,
    written on June 28,2000.). EXHIBIT NINE.

own report, the only person she treated that day was the plaintiff WEAVER.

The defendant's assert that Ms. CRIMMINS had allegedly washed some alleged "spit" out of defendant GLOETZNER'S eyes, but even according to the DECLARATION filed in this matter by CRIMMINS, there is absolutely no mention of CRIMMINS treating either defendant. See defendant's motion at Page # 5, Paragraph # 12.

As with the Two previously discussed DECLARATION'S of defendant's MEEHAN and GLOETZNER, the plaintiff would remind this Court that Ms. CRIMMINS made her DECLARATION under penalty of perjury, and CRIMMINS stated that she attached a copy of her original report to her SWORN DECLARATION, although no such attachment was provided to this plaintiff.

The plaintiff happens to have a copy of such report filed by nurse CRIMMINS and points out to the Court several area's in which CRIMMINS has now changed her version of the June 28, 2000 incident. In her (CRIMMINS) June 28,2000 report, CRIMMINS states "DIFFICULT TO ASSESS R.O.M.". (R.O.M. is abbreviation for "range of motion"). But in CRIMMINS' DECLARATION, CRIMMINS now claims that she had the plaintiff "raise his hands above his head, down to his waist, and to the right and left sides".

This is a fatal mistake by CRIMMINS in that, the defendant's failed to state that the plaintiff was placed in a "belly chain and black box" once the defendant's realized that the plaintiff had moved his hands from behind his back into the front. The

whole purpose of using a "belly chain and black box" is to limit
the inmate's range of motion. This is a pretty frequent procedure
when placing inmate's onto aircraft to be transported.

Defendant MEEHAN had entered the holding cell where the
plaintiff was at with defendant WALKER, and had placed a "belly
chain and black box" on the plaintiff prior to having the nurse,
CRIMMINS treat the plaintiff. With this device on, it is "IMPOSSIBLE"
for an inmate or the plaintiff to raise his hands above his head.
That's the reason CRIMMINS had difficulty in assessing the plaintiff's
R.O.M. as she stated herself in her June 28,2000 report. Plaintiff
is prepared to call witnesses to that fact that he was indeed
in a "belly chain and black box" on ||une 28,2000 while CRIMMINS
was examining the plaintiff.

Additionally, CRIMMINS stated in her report that she "Noticed
no bruises or swelling to the plaintiff's face". In the attached
photo (See EXHIBIT NINE) [20], taken by defendant's MEEHAN and WALKER
after CRIMMINS had cleaned the blood off the plaintiff's face,
note the "upper right lip" (which would be the Court's left),
also notice the plaintiff's right cheek area, and the dark spot
above plaintiff's right eye, just inside the hairline. It should
be noted, that defendant's MEEHAN and GLOETZNER adamantly denied
the issue about the plaintiff's head striking a chair, but now,
admit that the plaintiff's head did strike a chair. The same exact

---

20. See Attached (Copy of photo introduced by defendant's in
    plaintiff's criminal case).

chair that the plaintiff was told by defendant WALKER,"has been thrown away". CRIMMINS fails to make any reference to cleaning blood from the plaintiff's head, nor does she mention that the plaintiff's jail uniform was covered with blood as well.

Additionally, CRIMMINS stated in her June 28,2000 report that the plaintiff was "ambulated with difficulty to holding cell". Now, in CRIMMINS' SWORN DECLARATION she states that the plaintiff "walked to the holding cell without difficulty".

WHEREFORE, based on the obvious inconsistencies by this defendant, as well as by MEEHAN and GLOETZNER, there clearly exists "genuine issue's of material facts" that would warrant a trial in this matter.

In Paragraph Thirteen on Page Five, the defendant's assert that the plaintiff was treated at F.C.I. Miami and medically cleared. Once again, the defendant's have clearly misled the Court. Plaintiff received "NO MEDICAL TREATMENT" until July 26,2000 at the Spartanburg County Detention Facility, where the plaintiff was taken to the Spartanburg Regional Medical Center and received x-rays finally. The defendant's assertion that the plaintiff was "treated and medically cleared" at the F.C.I. Miami facility is clearly misplaced.

The plaintiff was never even brought to the Federal Correctional Institution until January 18,2001. Even for arguendo sake, if the defendant's meant to say the Federal Detention Center F,D,C, Miami, this claim is still clearly incorrect.[21]

The plaintiff was seen by a specialist in South Carolina

---

21. See Attached (Copy of medical records which establish date of injuries and location of treatment, if any).

who determined that the only thing to correct/improve the plaintiff's breathing through his nose would be surgery. That surgery, even though it was scheduled for August 2000, was blocked by defendant SMITH in South Carolina.

The plaintiff after seeing a different specialist for his shoulder injury on several occasion's and having surgery scheduled on several occasion's, the plaintiff finally received surgery for his right shoulder injury on November 27,2001. Even though it has been determined by a medical specialist that the plaintiff needs surgery for his deviated septum, the plaintiff has not received any surgery or further treatment for plaintiff's nose injury as of this date.

The defendants make a misguided assertion that the plaintiff is suing the defendant's only in their "individual capacities", this assertion is clearly incorrect. As the plaintiff has clearly stated in the First Amended Complaint at Page (iii), it clearly stated "All defendant's are named in their individual and official capacities...". Therefore, the defendant's are attempting to rely on strictly the "individual capacities" pleadings because the law is clear that "Qualified Immunity" does not apply to this civil action.

Additionally, in plaintiff's Second Amended Complaint filed with the Court on ||anuary 3,2003, the plaintiff again clearly stated that defendant's were named in their "individual and official capacities", once again, preventing any claimed defense

of "Qualified Immunity".

WHEREFORE, the plaintiff states that the defendants have failed to meet their burden as required pursuant to Rule 56(c) of the Fed. R. Civ. P., in that the defendants have failed to show that there is "no genuine issue's of material facts", as the plaintiff has clearly pointed out through submission of the attached statements/reports written by defendants on the day in issue. Issue's of material facts do clearly exists.

Further, se-ing that counsel for the defendant's is an Assistant United States Attorney, and that records in possession of the plaintiff show that counsel communicated with the Assistant United States Attorney Donald Chase (Named as a defendant in the Second Amended Complaint), counsel White had to know that the sworn declaration's being provided by defendant's MEEHAN, CRIMMINS, and GLOETZNER in this matter consisted of perjury, and that counsel's attempt to prevail on Summary Judgment through the use of said perjured declaration's amounts to "subornation of perjury", and the plaintiff would move the Court to act accordingly.

Clearly, one could easily construe by Mr. White's signature affixed to the defendant's motion for Summary Judgment, that Mr. White reviewed, investigated, and drafted said motion. Therefore, counsel for the defendants knew that as he was drafting the motion, that he was stating facts that were false and intentionally misleading to the Court.

Issue's of "genuine material facts" clearly exists, and therefore precludes the Court from granting defendant's motion for Summary Judgment as a matter of law.

## " THE LAW REGARDING SUMMARY JUDGMENT "

Rule 56(c), Federal Rules of Civil Procedure, authorizes entry of Summary Judgment [only] if the pleadings and supporting materials demonstrate that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. See **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).** The plaintiff states that the defendants have failed to meet this requirement.

An issue of fact is "material" if it is a legal element of a claim under the applicable substantive law and is one that might affect the outcome of the suit under the governing law. See **Id.** A material fact is "genuine" if "the record taken as a whole could lead a rational trier of fact to find for the non-moving party".**Id.**

Clearly, when a District Court is confronted with a motion for Summary Judgment, the Court must analysis that motion under the Two-prong test established by the Supreme Court in **Celotex Corp. v. Catrett, 477 U.S. 317 (1986).** First, the moving party [must] establish that no genuine issue of material fact exists. See **Allen v. Tyson Foods, Inc., 121 F.3d 642 (11th Cir. 1997); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).**

To decide whether the defendants have met their burden, the Court [must] view all reasonable inferences in light most favorable to the non-moving party. See **Schoenfeld v. Babbitt, 168 F.3d 1257 (11th Cir. 1999).**

Since the defendant's have failed to meet the Statutory

requirement of establishing that no genuine issues of material facts exists, the defendants motion for Summary Judgment must fail, and this matter brought before a trier of facts.

## II. PLAINTIFF HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES UNDER THE PRISON LITIGATION REFORM ACT.

In defendant's Second Argument for Summary Judgment, the defendant's assert that the plaintiff has failed to exhaust administrative remedies, and because of the same, the defendant's assert that the Court lacks subject matter jurisdiction. The defendant's rely on **42 U.S.C.§1997e(a)**.

On Page Eight of the defendant's motion for Summary Judgment at Footnote 18-19, the defendants quote their assertion of **42 U.S.C.§1997e(a)** in support of their argument. It is clear, their own argument defeats their very claim. The defendants want the Court to believe that a "pretrial detainee" who suffers a Constitutional Rights violation of his clearly established rights, must first attempt to pursue action through an "administrative process".

Further, the section of **42 U.S.C.§1997e(a)** quoted by the defendants is not applicable to the case at bar. The plaintiff was physically assaulted by Deputies of the United States Marshals' Service while at a Court appearance, and inside a Federal Courthouse. Defendants rely on **§1997e(a)** which they even quoted at Page Eight, Footnote 18. "[N]o action shall be brought with respect to "prison

conditions" under section §1983 of this Title, or any other Federal
Law, by a prisoner confined in any jail, prison, or other corr-
ectional facility until such administrative remedies as are avail-
able are exhausted".

This section does not apply to this matter for several reasons.
First, is the fact that plaintiff's claim against defendant's
MEEHAN and GLOETZNER makes no reference to any "prison conditions".
Especially, when an inmate is transported to the Federal Courthouse,
he is signed out of the prison and into the temporary custody
of the marshals. Therefore, in all practical matters, the plaintiff
was in the custody of the United States Marshals' and not the
"prison officials".

The attached exhibit's [22] are filled out everytime an inmate
is taken out of the Federal Detention Center by the U.S. Marshals'
to go to a court appearance in Fort Lauderdale, Florida. Further,
proof of this claim is that each time the plaintiff was taken
out of the Federal Detention Center, the marshal had to sign
document's, thereby making the marshal responsible for the safe
return of the plaintiff. The attached exhibit's are filled out
by medical staff at the Detention Center. These document's list
the plaintiff's current condition when he is turned over to the
U.S. Marshals' Service for transit.

Therefore, the scenerio in this case is the same as if the
plaintiff had just been taken into custody or arrested by the
defendant's, this is the same scenerio as the following cases:

_____

22. See Attached (Copy of transit document's-obtained via the
    F.O.I.A.).

See **Slicker v. Jackson, 215 F.rd 1225 (11th Cir. 2000)**, in that case, <u>Slicker</u> alleged that the officer's violated his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution by subjecting <u>Slicker</u> to an unlawful seizure when they placed <u>Slicker</u> under arrest, and by using excessive force. **Id @ 1227.**

Further, in <u>Slicker</u>, the district court found that the officers were not entitled to qualified immunity because <u>Slicker</u> presented enough evidence to raise a question of fact as to whether the officer's used excessive force when arresting <u>Slicker</u>. **Id. @ 1229.**

See also **Civil Rights 214(6), West Law Digest**, "Police officer's were not entitled to qualified immunity on arrestee's §1983 claim alleging that officer's used excessive force while making arrest, in view of evidence that officer's beat arrestee even though arrestee was handcuffed and did not resist, attempt to flee, or struggle with the officer's in any way". **Id @ 226 n.11.**

In the instant case, the plaintiff's pleadings and position has been the same since June 28,2000, in that the plaintiff never resisted, or struggled with the defendants in anyway. Although the plaintiff was found guilty of assaulting defendant GLOETZNER, the plaintiff assures the Court that a reversal is inevitable in that case, and as such, this case should be once again stayed.

As the plaintiff has raised in his request to stay this matter filed with the Court on January 21,2003. Clearly, a reversal of plaintiff's criminal case would defeat all claims that the defendant's

could raise, and especially, would open the issue to numerous additional claims, some of which are raised in the plaintiff's Second Amended Complaint.

See also, **Riley v. Dorton, 93 F.3d 113 (4th Cir. 1996)**, in that case <u>Riley</u>, a pretrial detainee brought a §1983 action against several police officers alleging the use of excessive force during interrogation after <u>Riley's</u> arrest. The district court granted summary judgment for the officer's, and <u>Riley</u> appealled. The court of appeals reversed and remanded.

"A pretrial detainee was not required to show serious injury when physical force was used against him in course of custodial interrogation before he could recover in §1983 action for use of excessive force". **Id @ 114 n.5.**

In the instant case, the plaintiff was in the custody of the United States Marshals' Service to appear before a United States Magistrate Judge. The purpose of the plaintiff's appearance was an Identity Hearing, where the plaintiff was subject to interrogation by the court.

In <u>Riley</u>, <u>Supra</u>, the defendants motion for summary judgment was initially granted because the district court erroneously relied on **Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994)(en banc)cert. denied, ___U.S.___, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995)**(Holding that a prison inmate generally may not bring a §1983 claim predicated on the Eight Amendment right to be free from cruel and unusual punishment if his injury is de minimis). <u>Riley</u>, appealled, arguing that <u>Norman v. Taylor</u> does not apply because his claim is based on his Fifth and Fourteenth Amendment due process rights that

prohibit the use of force during police interrogation's. <u>Riley</u>
Id @ 116.

The court in <u>Riley</u> stated that <u>Riley's</u> §1983 claim must
survive summary judgment because no unjustified physical force
may be used against a suspect during custodial interrogation,
even if the suspect does not sustain serious physical injury.
The court relied on **Gray v. Spillman, 925 F.2d 90, 93-94 (4th
Cir. 1991)**(applying the longstanding principle that the use of
force "in the course of custodial interrogation violates the
Fifth and Fourteenth Amendments of the Constitution. **Id @ 116
n.[3-5]**(citing **Ware v. Reed, 709 F.2d 345, 351 (5th Cir. 1983);**
accord **Wilkins v. May, 872 F.2d 190, 195 (7th Cir. 1989), cert.
denied, 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990);
Rex v. Teeples, 753 F.2d 840, 843 (10th Cir.) cert. denied, 474
U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985);** see also **Weaver
v. Brenner, 40 F.3d 527, 536 (2d Cir. 1994);** Cooper v. Dupnik,
963 F.2d 1220, 1244-45 (9th Cir. 1992) cert. denied, 506 U.S.
953, 113 S.Ct. 407, 121 L.Ed.2d 332 (1992).

The Rule, recognized in <u>Gray</u> and the cases cited above-that
no physical force is constitutionally permissible during interro-
gation-is based on the "due process right to be free from [police]
conduct designed to overcome the accused's will and produce an
involuntary incriminating statement". **Weaver v. Brenner, 40 F.3d
@ 536.** The Due Process violation is complete with the use of
force, even if there is no confession. **Id.; Cooper v. Dupnik,
963 F.2d @ 1244.** **Riley, Id @ 117.**

In the instant case, the plaintiff clearly made the defendant's

aware, after the defendant's had read the plaintiff's legal docu-
ments for his attorney, that the plaintiff was planning on attacking
his illegal arrest and illegal seizure. After the plaintiff informed
the defendant's that he (plaintiff) was planning on telling his
attorney about the defendant's reading these legal document's,
the plaintiff, even after being threatened that he "better not
say a word", the plaintiff not only told counsel, but additionally
pointed at defendant GLOETZNER as defendant walked by.

It was clear to the plaintiff, that the defendant's threat
about not "saying anything", and then not only saying something,
but pointing out the guilty defendant to counsel contributed
to the plaintiff being assaulted. The plaintiff claims that because
the plaintiff was assaulted immediately following his court appear-
ance, this case is similar to Riley Supra.

" A pretrial detainee, by contrast, is protected both by
the Fifth Amendment's protection against compelled self-incrimi-
nation and by the Fourteenth Amendment's protection against "exce-
ssive force that amounts to punishment" before trial. Citing
**Graham v. Connor, 490 U.S. 386, 395 n.10, 109 S.Ct. 1865, 1871
n.10, 104 L.Ed.2d 443 (1989); accord Bell v. Wolfish, 441 U.S.
520, 535-39, 99 S.Ct. 1861, 1871-74, 60 L.Ed.2d 447 (1979); United
States v. Cobb, 905 F.2d 784, 788-89 (4th Cir. 1990), cert. denied,
498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991).**

Pretrial detainee's are entitled to broader protection than
would be available under the Eighth Amendment alone because a
pretrial detainee is presumed innocent of any crime until he
is proven guilty after a fair trial or by a knowing and voluntary
guilty plea. See **Bell, 441 U.S. @ 535-36, 99 S.Ct. @1872-73.**

-24-

**Riley, Id. @ 118.**

The defendant's in the instant case will have a full opportunity to convince a trier of fact that they used no unjustified force against this plaintiff. In other words, defendant's MEEHAN and GLOETZNER will have the chance to show that they "obey[ed] the law while enforcing the law". See **Spano v. New York, 360 U.S. 315, 320, 79 S.Ct. 1202, 1205-06, 3 L.Ed.2d 1265 (1959).** It is true, that trials can be inconvenient and discomfiting, but the plaintiff asserts that a trial is required in this matter to determine whether the bounds of due process were exceeded.

See also **Sweatt v. Bailey, 876 F.Supp. 1571 (M.D. ALA 1995),** in Sweatt, Sweatt filed suit alleging that he was beaten while in detention. There the court held that although officer's must have flexibility to pursue duties without fear of lawsuit, officer's were not entitled to immunity from civil rights suit where evidence showed malicious and summarily punitive infliction of harm in form of beating arrestee. **Id @ 1571 n.11.**

Further, in Sweatt the court went on to state that "where officer who is present at scene and who fails to take reasonable steps to protect victim of another officer's use of excessive force, officer can be held liable for nonfeasance. **Id @ 1572 n.23.**

In the instant case, the defendant's assert that it is the plaintiff's Eighth Amendment that applies to this matter. The defendants are incorrect in that assertion. As discussed in Sweatt, Supra, the Eighth Amendment applies only after conviction. See **Whitley v. Albers, 475 U.S. 312, 318, 106 S.Ct. 1078, 1083-84, 89 L.Ed.2d 251 (1968); Ingraham v. Wright, 430 U.S. 651, 664,**

97 S.Ct. 1401, 1408-09, 51 L.Ed.2d 711 (1977).

Clearly, at the time the plaintiff was assaulted by the
defendant's there was no conviction. In fact, the plaintiff was
merely appearing in court for the purpose of an Identity/Removal
Hearing. The defendant's were clearly aware of the ruling in
**Whitley, Supra**, as the defendant's even referred the Court to
tha case in its motion for Summary Judgment. See defendant's
motion at Page #9, bottom paragraph. Therefore, counsel for the
defendant's misunderstood the holding in Whitley as applying
to the case at bar, as implying that the Eighth Amendment applied
to this case.

In Sweatt, Supra, @ 1575 n.[5,6] the court used a Two-prong
analysis to determine whether an official is entitled to qualified
immunity. The defendant must first show that he or she was acting
within the "scope of discretionary authority" at the time of
the alleged conduct. Once this is shown, the plaintiff must prove
that the official's conduct violated clearly established law.
Citing, **Sims v. Metropolitan Dade County, 972 F.2d 1230, 1236
(11th Cir.1992).** The defendant's in the instant case have failed
to meet this requirement.

No court in this Nation, would find that when officer's
are "predisposed to put someone in prison for life", go and ille-
gally search a citizen's residence without a warrant, intentionally
fail to leave a property inventory sheet stating what they seized,
use false pretenses to gain entry into the residence to conduct
said search, seize legal document's intended for an attorney
an clearly labeled as such, and then threatens a citizen that

he better not say a word about their illegal conduct, and finally,
assaults a citizen because not only he told about their illegal
conduct, but also because the officers thought the citizen was
"gay". Clearly, these action's would not constitute "discretionary
authority".

In order for the defendant's to even attempt to assert any
type of however misguided defense(s) to their egregious acts,
the defendant's would have to be able to prove that it's legal
to use false pretenses to search a residence, it's legal to search
a residence without a warrant, it;s legal to threaten a person
not to reveal their illegal conduct, it's legal to take and read
a person's confidential legal document's between a client/attorney,
it's legal to physically assault a person because you want to
put him in prison for life", it's legal to assault a person because
you believe he likes to have sex with men instead of his girlfriend/
wife, and it's legal for officer's to threaten and harrass a
witness to prevent that witness from offering testimony in a
civil/criminal matter.

These claims are simply impossible for the defendant's to
prove. The plaintiff has proven through the attached exhibit's,
and the exhibit's previously filed by this plaintiff that the
defendant's knew their actions to be in violation of the plaintiff's
civil and constitutional rights, and that the defendant's acted
with complete disregard for those rights and the duties they
swore to uphold when becoming law enforcement officer's.

Therefore, on this ground, asserted by the defendant's,
the Court must reject and deny the defendant's motion for Summary

Judgment.

Additionally, the defendant's assert that the plaintiff has failed to file any "administrative remedies" in reference to the June 28,2000 incident. That claim is also incorrect. Clearly, the plaintiff sought relief from numerous Government Agencies and State Agencies [23]. Clearly, the defendant's are incorrect in this assertion as well. All the facts of this case clearly show that Summary Judgment on behalf of the defendant's is completely inappropriate, and this Court must view those facts and deny defendant's motion for Summary Judgment.

### THIRD, THE DEFENDANTS ASSERT THAT THEY COMMITTED NO CONSTITUTIONAL VIOLATIONS.

Here, the defendant's rely on law that contradicts or is not applicable to this matter. When Circuit case law applied to an action contradicts case law established by the Supreme Court, the Court must adhere to the law of the highest court, the Supreme Court. The defendant's begin this argument with **Bell v. Wolfish, 441 U.S. 520 (1979)**, and they attempt to get this Court to apply law that goes against the very law the defendant's claim was established by the Supreme Court.

Here, the defendant's continue to apply cases that deal with "**CONVICTED PRISONER'S**", see **Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994); Tittle v. Jefferson County Commission, 10 F.3d 1535, 1539 n.3 (11th Cir. 1994); Campbell v. Sikes, 169 F.3d 1353, 1374-75 (11th Cir. 1999)**. In each of

these cases cited by the defendant's, the cases employ the words "CONVICTED PRISONER'S" , but as previously stated by the plaintiff, that argument is clearly misplaced and not applicable to this case.

Surely, the defendant's would be hard pressed were they to try to convince any court that on June 22,2000 and June 28,2000 the law wasn't clearly established that their action's amounted to constitutional violation's. the very cases cited by the defendants all predate the incident on June 28,2000.

Additionally, the defendant's reliance on **Hudson v. McMillian, 503 U.S. 1 (1992)**, deals with an incident that happen by "prison guards", and at a prison. the case at bar is not even remotely similar as the plaintiff's claims involve being physically assaulted while at a Federal Courthouse, by Deputy U.S. Marshals'.

The defendant's further attempt to rely of Whitley, Supra, as to support their position that the plaintiff's claims should be viewed under the Eighth Amendment. As previously raised by this plaintiff, the Whitley court stated just the opposite to be true. See Sweatt, Supra, **@ 1583 n.26.**

The defendant's argument is somewhat confusing, in that, they stipulate that the plaintiff was a "pretrial detainee" but yet, ask the Court to apply law that deals with "CONVICTED PRISONERS".

---

23. See Attache (Copies of letter's filed with numerous agencies and/or replies from said agencies. Further, it should be noted that the defendants are also the subject of an Internal Affairs Investigation as well in this matter and records are being sought.).

The issue of the plaintiff being illegally convicted does nothing to change the facts that on June 22,2000 and June 28,2000, the day the plaintiff was illegally seized and subsequently assaulted, the plaintiff was a "pretrial detainee". The Court must view the law that applied on the date of the incident's, not the illegal conviction almost Two-Years later.

This argument by the defendant's is misleading, and an attempt to grab at straws in hopes of finding some light at the end of the tunnel. To grant Summary Judgment on this issue in favor of the defendant's would clearly amount to a blatant miscarriage of Justice. Clearly, the act's committed by the defendant's amounted to not only constitutional violation's but also, violated both State and Federal Laws, as well as violating the plaintiff's civil rights. Rights the defendant's were clearly aware of.

Further, the defendant's then try to convince this Court that the injuries suffered by the plaintiff were "minor". The defendant's couldn't be farther from the truth. As exhibit's show, the plaintiff received a Deviated Septum which causes breathing difficulty. The plaintiff also suffered a Dislocated and Fractured Right Shoulder (Distal Clavicle).Plaintiff suffered "SERIOUS INJURIES". The defendant's cited cases that dealt with injuries where summary judgment was denied, and the plaintiff would incorporate by reference those cases cited by the defendant's  which would tend to support the plaintiff's position.

See **Williams v. Cash-C.O.I., 836 F.2d 1318, 1320 (11th Cir. 1988): Perry v. Thompson, 786 F.2d 1093 (11th Cir. 1986)** as stated on Page Eleven at footnote of defendant's motion for Summary

-30-

Judgment.

The plaintiff could cite tons of cases proving that Summary Judgment is not appropriate in this matter, and the plaintiff would refer the Court to **Slicker v. Jackson, Supra; Riley v. Dorton, Supra; Sweatt v. Bailey, Supra;** citing **Lamar v. Banks, 684 F.2d 714 (11th Cir. 1982); City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2s 398 (1987); Hancock v. Hobbs, 967 F.2d 462 (11th Cir. 1992)(Per Curiam); McKinney v. DeKalb County, 997 F.2d 1440, 1443 (11th Cir. 1993); Swint v. City of Wadley, 5 F.3d 1435 (11th Cir. 1993)(per Curiam), modified, 11 F.3d 1030 (11th Cir. 1994)cert. granted, ___U.S.___, 114 S.Ct. 2671, 129 L.Ed.2d 808 (1994); Fundiller v. City of Cooper City, 777 F.2d 1436 (11th Cir. 1985).**

Summary Judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material facts". See **Cornelius v. Highland Lake, 880 F.2d 348, 351 (11th Cir. 1989) cert. denied, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785. (1990).**

The Court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment. **Hutcherson v. Progressive Corp., 984 F.2d 1152, 1155 (11th Cir. 1993).** Likewise, if reasonable minds could differ on the inferences arising from undisputed facts, then the court should deny summary judgment. See **Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992).**

On a Summary Judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party, See **McCabe v. Sharrett,**

-31-

12 F.3d 1588, 1560 (11th Cir. 1994) citing from **Crenshaw v City of Defuniak Springs, 891 F. Supp. 1548 (N.D. Fla. 1995).**

Therefore, the plaintiff states that based upon all records before the Court, the defendant's Third claim for Summary Judgment must also fail.

## FINAL CLAIM BY DEFENDANTS IS THAT THEY ARE ENTITLED TO QUALIFIED IMMUNITY.

This is not a case where the defendant's weren't trained in proper law enforcement. They (defendant's) clearly admitted during cross-examination, that both, MEEHAN and GLOETZNER are "trained law enforcement officer's". The plaintiff incorporates the cases cited previously as applying to this claim.

Clearly, the law regarding "qualified immunity" applies [only] if the defendant's did not violate clearly established constitutional rights. The Constitution is extremely clear in reference to the acts committed by the defendant's, and the law was indeed clearly established way before June 22,2000 and June 28,2000, that the act's committed by these defendant's, done intentionally, maliciously, and sadistically to this plaintiff precludes the Court from granting Summary Judgment as a matter of law.

## PLAINTIFF'S FINAL ARGUMENT OPPOSING SUMMARY JUDGMENT.

The plaintiff wishes to bring to the Court's attention

the fact that the defendant's have intentionally failed to provide
discovery in this matter, as a result of their failure, the
Court may not grant Summary Judgment [24].

Plaintiff states that the defendant's have not provided
any discovery as requested in motion's filed with the defendant's
and this Court on December 4,2002. See **Dean v. Barber, 951 F.2d
1210 (11th Cir. 1992); Murphy v. Kellar, 950 F.2d 290 (5th Cir.
1992); WSB-TV v. Lee, 842 F.2d 1266 (11th Cir. 1988)**(holding
Summary Judgment improper until discovery is obtained).

Additionally, the plaintiff served on defendant's a request
for Admission's and Interrogatories, the defendant's have failed
to respond. By the defendant's failure to provide discovery,
and Admissions and Interrogatories asked by the plaintiff the
defendant's have hindered the plaintiff from adequately filing
a motion to oppose defendant's motion for Summary Judgment.
Additionally, the plaintiff sought copies of his trial transcripts
from the criminal phase of this case [25]. Those transcripts would
prove that the defendant's have committed perjury in their sworn
declaration's submitted in support of their motion for Summary
Judgment. Those transcripts would also reveal another version
of how the defendant's claim the incident's occurred on June
28,2000, different from their attached statement's and Sworn
Declaration's.

Requests for Admissions, which ask the opposing party to

---

24. See Attached (Copies of letter's from Appellate counsel
    in criminal case verifying that counsel can not even get
    copies of the trial transcripts to properly file plaintiff's
    appeal.
25. See Attached (Copy of Transcript Order Form submitted by

admit or deny the truth of particular facts, are among the most useful tools of discovery. Facts that have been admitted are binding, and can be used to establish those facts at trial or on a motion for summary judgment.

Rule 36(a) Fed. R. Civ. P. states that "if a request for admission's is not timely answered, the matter is deemed admitted". Therefore, the plaintiff incorporates both MEEHAN'S and GLOETZNER'S demand for Admission's and Interrogatories as having been admitted by the defendant's, and moves the Court to consider those admission's when ruling on this motion opposing defendant's motion for Summary Judgment [26].

Further, the defendant's make reference themselves to not providing any discovery in this matter, and the plaintiff would further incorporate the defendant's admission to not providing discovery to deny the defendant's motion for Summary Judgment[27].

## " CONCLUSION "

**WHEREFORE,** the Plaintiff, having answered the defendant's motion for Summary Judgment, and having submitted the attached exhibit's, and sworn affidavit's/declaration's in support of the same, the plaintiff moves the Court to deny the defendant's motion for Summary Judgment, or in the alternative, to stay

---

plaintiff).
26. See Copies of Demand For Admission's and Interrogatories on file in these proceedings.
27. See Attached (Copy of Page Three, Paragraph Ten of defendant's Motion Opposing Leave by plaintiff to file a Second Amended Complaint).

the motion pursuant to Rule 56(f) Fed. R. Civ.P. until such time as the defendant's have produced discovery [28].

**PLAINTIFF STATES UNDER PENALTY OF PERJURY, 28 U.S.C.§1746, THAT THE FOREGOING IS TRUE AND CORRECT.**

Respectfully Submitted,

Randy Anthony Weaver
Plaintiff/Pro Se
U.S.M. # 92903-071
Federal Correctional Inst.
P.O. Box 779800
Miami, Florida   33177

---

28. See **Fitzpatrick v. City of Atlanta, 2 F.3d 1116 n.3 (11th Cir. 1993)**;**Cox v. Adminstrator U.S. Steel & Carnegie, 17 F.3d 1413 (11th Cir. 1994)**; **Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1213 (11th Cir. 1995)** all holding that a stay of a motion for Summary Judgment is appropriate if the non-moving party has not received discovery.

## CERTIFICATE OF SERVICE AND MAILING

I **HEREBY CERTIFY**, that a true and correct copy of the forgoing declaration opposing defendant's motion for Summary Judgment along with attachments was mailed this 21st day of Feburary,2003, to Mr. Charles S. White, A.U.S.A. Counsel for Defendant's, U.S. Attorney's Office, 99 N.E. 4TH Street Miami Florida 33132, by "CERTIFIED MAIL-RETURN RECEIPT REQUESTED", postage pre-paid.

I **HEREBY CERTIFY**, that by my signature hereto affixed, I did personally review the contents of the foregoing, and did personally witness the plaintiff, Randy Anthony Weaver, place the same in the Legal Mail Box at the Federal Correctional Facility on this 21st day of Feburary,2003.

Witness Signature's:

By: _____
Randy Anthony Weaver
Plaintiff/Pro Se

" EXHIBIT ONE "

NOTICE FILED IN U.S. DISTRICT COURT DAY AFTER ASSAULT.

( see footnote # 1 )

" EXHIBIT TWO "

COPY OF NOTICE STAMPED FILED ON JULY 7,2000.

( see footnote # 4)

PLAINTIFF'S EXHIBIT TWO

REC'D by _____ D.C.

JUL   7 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

RE: REQUEST & MOTION TO FILE
CIVIL ACTION PURSUANT TO 28
U.S.C. § 1391, AND EVIDENTS ETC.

Dear Honorable Clerk;                  6-2-2000

ON June 29, 2000 Approximately
12:05 PM, immediately AFTER I LEFT COURT
Building in Front of THE Honorable
Federal JUDGE William C. Turnoff SHOW
THIS PETITIONER WAS PHYSICALLY
ASSAULTED By A UNITED STATES MARSHALL
while STILL INSIDE THE COURTHOUSE.

THIS PETITIONER IS SEEKING CRIMINAL
CHARGE(S) AGAINST SAID MARSHALL
FOR (2) COUNTS OF FELONY ASSAULT.

-1-

[illegible] UNDER THAT THE HONORABLE COURT [illegible] THE CURRENT NUMBER OF 1983 CIVIL SUITS, [illegible], THE PETITIONER WILL NAME AS DEFENDANT(S):

(1) THE UNITED STATES JUSTICE DEPT.;

(2) THE UNITED STATES MARSHALL'S SERVICE; AND

(3) THE FEDERAL B[illegible] OF PRISONS; AND,

(4) THE UNITED STATES MARSHALL RESPONSIBLE FOR SAID ASSAULT, ALONG WITH THE PARTNER OF THAT U.S. MARSHALL THAT DID NOT MAKE ANY ATTEMPTS TO PREVENT SAID ASSAULT.

FURTHERMORE, THIS PETITIONER WOULD MOVE THIS HONORABLE COURT FOR AN "ORDER", PREVENTING ANY AND ALL FORM OF RETALIATION AGAINST THIS PETITIONER

By PCT UNTIL C.77(s), [illegible] the most [illegible] [illegible] and [illegible] Request the court provide necessary documents and respond to Filing "informa pauperis," and then in the event this court finds merit in Petitioners claim(s), that this court appoint legal counsel to properly prepare further court document(s). I thank this honorable court in advance for its time and consideration in this matter.

Respectfully Submitted,
Sincerely,

_Randy Anthony Weaver_
Randy Anthony Weaver
Pro Se

CC: Federal
Public Defender
Broward Co. FL;
My records, U.S.
Attorney's Office

— 3 —

" <u>EXHIBIT THREE</u> "


<u>COPY OF JURY VERDICT FORM</u>.


( see footnote # 6)


PLAINTIFF'S EXHIBIT THREE

dlc km

# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **01-6069**

18 U.S.C. §111(a)(1)   **CR-ROETTGER**

**MAGISTRATE JUDGE SNOW**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| RANDY ANTHONY WEAVER, | ) |
| Defendant. | ) |

## INDICTMENT

The Grand Jury charges that:

### COUNT I

On or about June 28, 2000, at Broward County, in the Southern District of Florida, the defendant,

RANDY ANTHONY WEAVER,

did forcibly assault, resist, oppose, impede, intimidate, interfere with Michael Gloctzner, a Deputy of the United States Marshal's Service, while he was engaged in his official

*Attachment A*

duties, in violation of Title 18, United States Code, Section 111(a)(1).

A TRUE BILL

FOREPERSON

GUY A. LEWIS
UNITED STATES ATTORNEY

DONALD F. CHASE, II
ASSISTANT UNITED STATES ATTORNEY

REC'D by _____ D.C.
DKTG

JUN 1 8 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 01-6069-CR-ROETTGER

vs

RANDY ANTHONY WEAVER

FILED by _____

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

**VERDICT**

_____/

We the jury, find the defendant RANDY ANTHONY WEAVER,

1. _Guilty_____      as to forcibly assaulting, impeding
   Guilty/Not Guilty            or interefering with the person
                                described in the indictment.

If your answer to question number 1 is guilty, do not answer
question 2.  However, if your answer to question number 1 is not
guilty, please answer question number 2.

2. _____      of the lesser included offense of
   Guilty/Not Guilty          simple assault of a person
                              designated in section 1114.

as charged in the indictment.

        SO SAY WE ALL.

Dated this ___6/13/02___ Day of June, 2002 at Fort Lauderdale,
Florida.

                              _____
                              Foreman/Forewoman

" <u>EXHIBIT FOUR</u> "


<u>COPY OF CRIMINAL NOTICE OF APPEAL</u>.


( see footnote # 7)

FILED
PAID _____ no
In Forma
Pauperis ___ no
Clarence Maddox, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES of AMERICA,           ]

                Plaintiff,          ]

v.                                  ]          01-6069-CR-ROETTGER

                                    ]

RANDY ANTHONY WEAVER,               ]

                Defendant.          ]

_____

**DEFENDANT WEAVER'S NOTICE OF APPEAL CHALLENGING JUDGEMENT AND
SENTENCE PURSUANT TO RULE 37**

COMES NOW, Randy A. Weaver, the Defendant in the above-entitled matter and
does hereby file his Notice of Appeal in the above-entitled matter, challenging
the District Court's Judgement and Sentence, pursuant to Federal Rules of Criminal
Procedure, Rule 37.

The Defendant, WEAVER would further move this Court for an Expedited Appeal
in this matter, and would move that the honorable clerk forward said records,
exhibits, transcripts to the Court of Appeals in a timely manner.

                                    Respectfully Submitted,

                                    Randy Anthony Weaver
                                    U.S.M. # 92903-071
                                    Federal Detention Center
                                    P.O. Box 019120
                                    Miami, Florida 33101-9120

## CERTIFICATE OF SERVICE AND MAILING

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed

this 26th day of August 2002 to Donald F. Chase, Esq., Assistant United States

Attorney, United States Attorney's Office 500 East Broward Boulevard, Suite #700

Fort Lauderdale, Florida 33394; Scott W. Sakin, P.A. 1411 N.W. North River Drive

Miami, Florida 33125, by depositing the same in the U.S. Mail at the Federal

Detention Center in Miami, Florida.

Respectfully Submitted,

Randy Anthony Weaver
Defendant
U.S.M. # 92903-071
Federal Detention Center
P.O. Box 019120
Miami, Florida  33101-9120

-2-

" <u>EXHIBIT FIVE</u> "


<u>PHOTOCOPY OF ENVELOPE DOCUMENT'S ARRIVED IN</u>.


( see footnote # 12)


PLAINTIFF'S EXHIBIT FIVE



" <u>EXHIBIT SIX</u> "


<u>STATEMENT TAKEN BY PRIVATE INVESTIGATOR</u>.


( see footnote # 15)

APPELLANT "A-3"

**Date:** 8/7/00 3:42 PM
**Sender:** Darrell Thompson
**To:** Benjamin Stepp
**Priority:** Normal
**Subject:** Interview with Vickie Newson/Weaver Case

On Monday, August 7, 2000 I conducted a telephonic interview with
Vickie Newson who was Randy Weaver's landlady in Florida. Her
telephone number is 954-426-5182.

Vickie Newson said Weaver lived in her home from November 1999
until June 2000. The US Marshal's came and arrested him. She said
they came in with guns in their hands like Weaver was an armed
bank robber. She said Weaver was never aggressive with her and he
paid his rent. Weaver was no angel she said but he was a decent
person. He did some work on her property while he lived with her
and she loaned him some money supposedly to buy some clothes to
look for work. She found out later that he gave the money to his
girlfriend. The money was repaid she added and Weaver does not
own her for anything. She said she believes that Weaver needs
some psychiatric counseling. Just putting him in jail will not
help him in the long run she said, he needs some help

" <u>EXHIBIT SEVEN</u> "


<u>COPY OF ORIGINAL STATEMENT OF DEFENDANT MEEHAN</u>.


( see footnote # 16)

U.S. Department of Justice
United States Marshals Service



---

REPORT OF INVESTIGATION                                                                Page 1 of 2

| 1 FID# 401788 | 2 DATE OF REPORT 06/28/2000 | 3 REPORTED BY James Meehan, DUSM |
|---|---|---|
| 4 CASE TITLE WEAVER, Randy | | AT: USMS/Ft Lauderdale |

6 TYPE OF REPORT (Check One)

| | [X] ARREST |
|---|---|
| [ ] REPORT OF ELECTRONIC INTERCEPTION | [ ] INTELLIGENCE UPDATE |
| [ ] COLLATERAL LEAD | [ ] MEMORANDUM TO FILE |
| [ ] WITNESS INTERVIEW | [X] INCIDENT REPORT |

---

On 06/20/2000, the USMS Ft Lauderdale received a collateral lead from the District of South Carolina to located and apprehend WEAVER, who was wanted for absconding from supervision from their district. WEAVER's original charges were Threatening the President of the United States. WEAVER has a lengthy criminal history which include the following arrests: 2 Assault and Batteries, 5 Burglary/Larcenies, 1 Fire arms violations, 5 Rape/Sexual Assaults, 1 Threatening the President, 2 Escapes, 5 Resisting Arrests, 1 Aggravated Harassment, 1 Bribing a Witness,  and 2 Criminal Domestic Violence Charges.

On 06/21/2000, DUSM's Meehan and Gloetzner began conducting a surveillance of the following address where WEAVER was believed to be residing; 1991 SW 77th Court, in Coconut Creek, Fl. At approximately 1800 hrs, on this same date, DUSM's believed that they observed WEAVER near the residence but lost sight of him in the darkness.

On 06/22/2000, DUSM's Meehan and Gloetzner and Deputies from the Broward Sheriff's Office surrounded the above residence and made contact with the owner, Vicki Newsom. The owner gave DUSM's consent to search and advised that WEAVER was in the house and was still in his bedroom. DUSM's Meehan and Gloetzner attempted to make contact with WEAVER, however the bedroom door was locked and WEAVER refused to come to the door. DUSM's Meehan and Gloetzner could hear WEAVER moving around inside the room and believed he might be attempting to escape. DUSM's forced the door open and located and apprehended WEAVER. WEAVER was then transported to the U.S. Court House in Ft Lauderdale for a removal hearing. At his hearing, WEAVER's attorney advised the court that WEAVER wished to fight identity. USMJ Snow set an identity hearing for 06/28/2000.

On 6/28/2000, DUSM's Meehan and Gloetzner entered the cell block to secure WEAVER and escort him to the hearing in front of USMJ Snow. Immediately upon coming into contact with WEAVER, he appeared agitated and aggressive towards the DUSM's. WEAVER was secured in the cellblock adjacent to USMJ Snow's courtroom, until the time of his hearing. While in this cell, WEAVER became even more agitated. At the time of WEAVER's hearing, DUSM's Meehan and Gloetzner retrieved WEAVER from the cell and DUSM Gloetzner advised him not to stand up or move around the courtroom, unless directed to do so by USMJ Snow. WEAVER

---

| 7 SIGNATURE (SDUSM) | 8 DATE | 11 DISTRIBUTION |
|---|---|---|
| | | DISTRICT |
| 9 APPROVED (Supervisor Title) | 10 DATE | HEADQUARTERS |
| | | OTHER |

U.S. Department of Justice
United States Marshals Service



---

| REPORT OF INVESTIGATION CONTINUATION | | Page 2 of |
| --- | --- | --- |
| 1 FID# 404788 | 2 DATE OF REPORT 06/28/20?? | 3 REPORTED BY James Meehan, DUSM |
| 4 CASE TITLE WEAVER, Randy | | AT USMS/Ft Lauderdale |

---

told DUSM Gloetzner that he should shut the fuck up. WEAVER remained calm through out the hearing and was found to be the Randy WEAVER that was wanted by the District of South Carolina. USMJ Snow ordered that WEAVER be removed to the District of South Carolina in USMS custody, because he was a risk of flight. DUSM's Meehan and Gloetzner then escorted WEAVER out of the courtroom. Once leaving the courtroom, DUSM Gloetzner applied one handcuff to WEAVER's left hand and then WEAVER attempted to spin around swinging his right arm. DUSM Gloetzner blocked WEAVER's swing and forced WEAVER to the ground. DUSM's Meehan and Gloetzner wrestled with WEAVER on the floor, but were able to apply the second handcuff. While escorting WEAVER to the USMS cellblock, WEAVER advised DUSM Gloetzner that he thought DUSM Gloetzner was a pussy and that if his restraints were removed he would kick DUSM Gloetzner's ass. WEAVER further advised DUSM Gloetzner that if he didn't believe him, then DUSM Gloetzner should look at his criminal history, because he has beat the shit out of officer's bigger than DUSM Gloetzner, in the past. WEAVER then moved quickly towards DUSM Gloetzner, spit in his face and attempted to head butt him. DUSM's Meehan and Gloetzner then physically restrained WEAVER and had to physically escort him into the USMS cellblock and into a cell. WEAVER resisted and fought with DUSM's the entire way. DUSM Gloetzner was seen by the on duty nurse in the U.S. Courthouse. After treating DUSM Gloetzner, the nurse came to the cellblock and treated WEAVER for a bloody nose, a bloody lip and shoulder pain. After treating WEAVER, the nurse advised that WEAVER did not appear to have any serious injuries, but would recommend that he see a physician at the FDC in Miami for a more examination

" EXHIBIT EIGHT "

COPY OF ORIGINAL STATEMENT OF DEFENDANT GLOETZNER.

( see footnote # 17)

PLAINTIFF'S EXHIBIT E GLT



**U.S. Department of Justice**
United States Marshals Service



| REPORT OF INVESTIGATION | | Page | 1 |
| --- | --- | --- | --- |

| 1. CASE #: 6:96-96-1 FID#: 404788 | 2. DATE OF REPORT 6-28-00 | 3. REPORTED BY: M.GLOETZNER |
| --- | --- | --- |

4. CASE TITLE: USA -vs- WEAVER, RANDY

5.TYPE OF REPORT *(Check One)*:
[ ] REPORT OF ELECTRONIC INTERCEPTION   [ ] ARREST
[ ] COLLATERAL LEAD                     [ ] INTELLIGENCE UPDATE
[ ] WITNESS INTERVIEW                    [ ] MEMORANDUM TO FILE
                                         [x] INCIDENT

On 6-28-00, at about 10:30am Deputies Meehan and Gloetzner escorted WEAVER to magistrate court in Fort Lauderdale at 10:30am.  WEAVER was very agitated prior to going to court for an unknown reason WEAVER was advised once he was in court not to stand or move about the court room unless the Judge instructed him to do so.  WEAVER said shut the fuck up in response.

At about 11:00am, Deputy Gloetzner attempted to put restraints on WEAVER who jerked his hand away. Deputies controlled WEAVER and put restraints on him.  WEAVER was placed in the elevator.  WEAVER then stated that if his restraints were removed he would kick Deputy Gloetzner's ass

After exiting the elevator WEAVER walked up next to Deputy Gloetzner until he was face to face WEAVER then spit and attempted to hit Deputy Gloetzner in the face with his head.  WEAVER continued to resist and fight against Deputies until he was placed into a cell by himself.  WEAVER was seen by the on duty Nurse in the Ft. Lauderdale Federal building.  The nurse advised that there were no serious injuries  The Nurse stated that WEAVER should see a doctor once he returns to Miami Federal Detention Center

| 7. SIGNATURE *(Name)* | 8. DATE | 11. DISTRIBUTION |
| --- | --- | --- |
| 9. APPROVED *(Name and Title)* | 10. DATE: 6-28-00 | HEADQUARTERS OTHER |

UNITED STATES MARSHALS SERVICE
THIS REPORT IS THE PROPERTY OF THE UNITED STATES MARSHALS SERVICE NEITHER IT NOR ITS CONTENTS MAY BE DISSEMINATED OUTSIDE THE AGENCY TO WHICH LOANED

" <u>EXHIBIT NINE</u> "

<u>COPY OF ORIGINAL STATEMENT OF DEFENDANT CRIMMINS</u>.

( see footnote # 19)

PLAINTIFF'S EXHIBIT NINE

## US PUBLIC HEALTH SERVICE
### Federal Occupational Health

### UNUSUAL INCIDENT REPORT

I.    DESCRIPTION OF THE INCIDENT

Date of Incident **6-28-00**        Time of Incident **~11:00 AM**

Health Center and Location
(Stamp)

Name(s) and Position of FOH Staff Involved: **Susan Crimmins RN**

Name(s) of Others Involved: (Visitor, Witness) **Weaver, Randy**

Sequential Account of What Happened, Including Action Taken: **Requested by U.S.M. to check on client "Weaver, Randy" in cell holding area. Assessed client, sitting in chair c̄ cuffs on hands + feet. Small amt of blood noted under nose + on top of lip. →**

II.   SUPERVISOR NOTIFIED (Who, When) **Mitchka Jalali RN, PC**

III.  ASSESSMENT OF HOW INCIDENT COULD HAVE BEEN PREVENTED AND
      ACTION TAKEN TO PREVENT FUTURE INCIDENTS:

**Susan Crimmins RN** 6/28/00
Signature of DFOH Staff Person        Date

**Susan Crimmins RN, BS**
Printed Name

No swelling & bruises noted. face. Client alert, speaking clearly, PERL, moved extremities as much as allowed c̄ cuffs. HR strong + reg, 7 Cleaned dried blood c̄ peroxide + H₂O. Checked mouth, no bleeding noted. Client c/o Rt. Shoulder pain. Assessed Rt. Shoulder, no swelling noted. Difficult to assess ROM. Rec. F/u x-rays for nose + shoulder. Client ambulated s̄ difficulty to cell.

6/28/00   Record released to Marshals Office for F/u treatment.
                                    D Cummirska

" <u>ATTACHMENT ONE</u> "


<u>COPY OF ARREST WARRANT FROM SOUTH CAROLINA</u>.


( see footnote # 14)


**PLAINTIFF'S ATTACHMENT ONE**

# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### GREENVILLE DIVISION

UNITED STATES OF AMERICA

     vs.

RANDY A. WEAVER

**WARRANT FOR ARREST**

CASE NUMBER: CR 6:96-96-1

To:    The United States Marshal or any Authorized United States Officer

    YOU ARE HEREBY COMMANDED to arrest RANDY A. WEAVER and bring him forthwith to the nearest magistrate judge to answer a

☐ Indictment      ☐ Information      ☒ **Complaint**      ☐ Order of Court
    ☐ Violation Notice      ☒ Probation Violation Petition

charging him with VIOLATION OF SUPERVISED RELEASE.

(SEE ATTACHED ORDER)

William M. Catoe, Jr.
Name of Issuing Officer

*Carolyn Moss*
Signature of Issuing Officer

United States Magistrate Judge
Title of Issuing Officer

July 19, 1999      Greenville, SC
Date and Location

Bail to be set by Judge before whom defendant initially appears.

## RETURN

" <u>ATTACHMENT TWO</u> "

<u>MEDICAL REPORTS/ NOSE INJURY AND SHOULDER INJURY</u>.

( see footnote # 18)

CIVIL  EXHIBIT "AS-01"

Ear, Nose and Throat
Neck Surgery Clinic, P.A.
___ Drive • Suite A
___, SC 29003
08/1?/02

NAME: CALIFORNIA AUTHN   384   JPG SC 29301
ADDRESS:
TELEPHONE NO  (864) 596-8585   AGE  36   DOB   07-__-64   M

BY ___   INSURANCE ___

Facial Fx   1-28-02

I was dragged/assaulted by U.S. Marshalls __ ended up __ a facial Fx but was __ medical treatment, have to __ the __ that side of nose. Still has pain at night __ to the nose, been better __ I got __ it hurts up into nose. Also some f/u __ problems since accident.

HX OF:  ASTHMA ___   HAY FEVER ___   CHEST PAIN ___   SOB ___   FREE BLEEDER ___   TOBACCO ___   ALCOHOL ___   STREET DRUG ___   GENERAL HEALTH ___

Xray of SIMC - old facial Fx

FAMILY HISTORY:  CANCER ___   DIABETES ___   ASTHMA ___   HAY FEVER ___

VITAL SIGNS:  HT ___   WT 149.8   P ___   R ___   B.P ___   STANDING B.P ___

APP  NL   SCARS  ✓   LESIONS  Ø   MASSES  Ø

TENDERNESS ___   FACIAL NERVE ___

EOM ___   DIPLOPIA ___   PUPILS ___   CORNEA ___   VISION ___
CANAL RT  clear   DRUM RT  clear   PAIN  NL
CANAL LT  slightly impacted wax   DRUM LT  clear
N.C.  NL   SEPTUM  deviated RT   TURBINATED RT   SMELL
ENDOSCOPY  Turned over hit ? at anterior nasal spine

LIPS  NL   GUMS  NL   MUCOSA  moist   TONGUE  NL
TEETH  loud molars or premolar   PALATE  intact   UVULA  NL
TONSILS  ___ XII NOS   PILLARS  NL   POST PHARYNX  NL
PHARYNX:  ADENOIDS ___   E. TUBE ___   POST CHOANAE ___
LARYNX:  EPIGLOTTIS ___   VALLECULA ___   PYRIFORM SINUS ___
ARYTENOIDS ___   FALSE CORDS ___   CORDS ___

SYMMETRY  NL   TRACHEA  midline   THYROID  Ø Enl
SALIVARY GLANDS  Ø Enl   LYMPH NODES  Ø Enl
CHEST MASSES ___   TENDERNESS ___

___   CHEST SYMMETRY ___   EXPANSION ___
___   CAROTID ___
___   SHARP ROMBERG ___   RIN ___   NYSTAGMUS ___
___   TEMP  XXV.VII   ORIENTED  ✓

ASSESSMENT:  __ septum __ Imp __ Cerumen
__ __ this __ __ breathing __ __ nose
__ __ sinus __ explained FESS surgery
__ system, expectations, risks, other __ __
__ OP Intro.

**Cedars Medical Center**

1400 N.W. 12 Avenue
Miami, FL 33136

# FAX COVER SHEET
## RELEASE OF HEALTH INFORMATION

ATTENDING: _____  ____ CONSULTANT ____  ____ REFERRING ____  ____

PRIMARY CAR ____  AUTHORIZATION: ____ ✓ ____

DATE 28 08 TIME: 10⁵ a.m./p.m. PAGES 2 (including cover sheet)

TO: _____  Health Care Facility  FUNERAL
   (Authorized receiver's name)

FROM C ih  _____  DETUNTI CU
   (Sender's name)        (Authorized receiver's facility address, if needed)

TELEPHONE _____  FAX 282 64
   (Authorized receiver's number)        (Receiver's fax number)

RE: RANDY WEINER  DOB: _____

Date of Service _____  SS# _____
Type of Service  ADM - ER - OP (circle one)

Reports Needed _____

_____

**CONFIDENTIALITY NOTE:** The documents accompanying this fax transmission contain confidential information, belonging to the sender, that is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this fax in error, please notify us by telephone immediately to arrange for return of the original documents to us.

For office use only: _____  FAX _____  STAT _____  NOT STAT _____

Rev. 7/98   Telephone: _____
FAX: M PS
       Fax _____



Federal Detention Center
P.O. Box 019118
Miami, Florida  33101-9118

Fax Transmission Cover Sheet

From: Tania Barrantes, HRA    Phone #: (305) 982-1335

To: Cedars Medical    Phone #:

Agency: Health Information    Fax #: (305) 325-4490

Date: 2/7/02    Time: 9:45 AM.

Number of Page(s) including cover: 2

Remarks: Please Fax ASAP to me

Thanks!

FAX (305) 982-1343

U.S. Department of Justice
Federal Bureau of Prisons

Authorization to Provide Medical Records to FDC Miami

I understand th FDC Miami is req esting medical records and/or m dical information pertaining to me and the treatment I receive at your facility/hospital/clinic. hereby authorize you to provide to FDC Miami, and/or its a nts, representatives, or attorneys any medical information or medical records which aros t your facility/hospital/clinic. I furthrize you to give them complete copies and full disclos e of any medical records and/or information that ha been prepared or collected or will be prepared or collected on me while I was at your facility/hospital/clinic. This authorization deemed effective until expressly revoke i ing by me

*Authorized Third Party Recipient of My Medical Records/Information:*

Name _____ FDC MIAMI
Address _____ 33 N.E. 4th STREET
City _____ State: _____ Zip ___ MIAMI, FL 33132
ATTN: MEDICAL RECORD

Inmate Name: WEAVER, Randy   Reg. No. 92903-071
Date: 12/13/01   Inmate Signature: Randy Wen__
Witnessed by: Jauni Bastrante, MRAS

D·O·B 7/26/1964
Surgery Done 11/27/01

COLUMBIA CEDARS
MEDICAL CENTER

1400 SW 12th Avenue
Miami, Florida  33136
OPERATIVE REPORT

* Acct.#: 541730007
* WEAVER, RANDY
* MRN#: E0612425
* DATE OF BIRTH:  12 [illegible]
* OP'D DATE: 11 27 01

PREOPERATIVE DIAGNOSIS:         Separation of right
                                acromioclavicular joint.

POSTOPERATIVE DIAGNOSIS:        1    Separation of right
acromioclavicular joint

                                2    Degenerative arthritis of
the right acromioclavicular
joint.

OPERATION:                      Resection of distal clavicle
                                debridement of the joint  and
                                repair of the capsule

SURGEON:                        James J  Kim, M.D

ANESTHESIA:                     General.

DETAILS OF THE PROCEDURE:
Under General anesthesia. with the patient on the operating
room table in the supine position, the table was fashioned
into a beachchair shape   One sandbag was placed on the right
shoulder.  The right shoulder was prepped and draped in the
usual sterile manner.  A longitudinal skin incision was made
across the acromioclavicular joint along the line of the
clavicle over the acromion.  The capsule was then incised
along the line of the incision and the periosteum was peeled
off the distal clavicle.  The acromioclavicular joint was very
degenerative with inflammatory tissue in it   When the distal
clavicle was isolated, using a small oscillating saw, about
cm of the distal clavicle was removed.  The edges were
smoothed using a rongeur.  After that, hemostasis was obtained
out using the coagulating Bovie and the operative field was
irrigated using antibiotic solution.  The anterior port of
the capsule was sutured to the depth of the posterior part of
the periosteum in a capsule on the clavicle   Then the
posterior capsule was sutured over this anterior capsule
# Ethibond.  Very tight repair of the capsule with the distal
clavicle very well-placed, was accomplished.  After that, the
rest of the cut on the periosteum and capsule were repaired
using 0 Vicryl.  Irrigation was carried out again and the
subcutaneous tissue was closed using 2-0 chromic.  The skin
was closed using skin staples.  Xeroform gauze, 4 x 4, ABD
and tape were applied and the arm was placed in an arm sling
The patient tolerated the procedure well and left the
operating room in good condition.

JAMES J KIM, MD

JJK/TI404/633927
DD: 11/27/01
DT: 11/27/01

ESIGN

TRANSCRIBED BY: TRANSMITTED
DATE OF TRANSCRIPTION  11/29/01

REPORT STATUS UPDATED BY:

PATIENT NAME: WEAVER,RANDY
     UNIT NO: E0429425

   EXAM: 000551846 CXR SINGLE VIEW

AP CHEST                11/27/2001

PROJECTILE FRAGMENTS OVERLIE THE RIGHT LUNG BASE. THERE IS NO FOCAL
PNEUMONIA, PNEUMOTHORAX, CHF OR CARDIOMEGALY.

IMPRESSION

1.   PROJECTILE FRAGMENTS RIGHT LUNG BASE.

2.   NO ACTIVE DISEASE.


** Electronically Signed by ROBERT P. BEECHAM on 11/27/2001 at 1639
            Reported by: ROBERT P. BEECHAM, M.D.
             Signed by:   BEECHAM,ROBERT P.


CC: James J. Kim MD; Federal Detention Center

DICTATED DATE/TIME: 11/27/2001 (1639)
TECHNOLOGIST: ROBERT CORNELIUS,RT
TRANSCRIBED DATE/TIME: 11/27/2001 (1639)
TRANSCRIPTIONIST: CRAD:RB
PRINTED DATE/TIME: 01/07/2002 (1447)   BATCH NO: N/A

PAGE 1            Signed Report Printed From TCI

ACCOUNT NUMBER                  PATIENT NAME:
Miami, Florida 33136            DOB: 07/26/1964 AGE: 37
                                ACCT NO:
                                EXAM DATE:
                                RADIOLOGY NO:

```
RUN DATE: 02/07/02               CEDARS MEDICAL CENTER LAB                      PAGE 1
RUN TIME: 1447                        Specimen Inquiry
                         PCI User: CCHART·CEA   Lab Database: LAT.CCECA

PATIENT: WEAVER,RANDY            ACCT #: E41732227     LOC: CAMB01      U #: 361.043
                                AGE/SX: 27/M          ROOM:            REG: 11/27/01
REG DR:  Kim,James J            DOB:   07/26/84       DED:             DIS:
                                STATUS: REG SDC       TLOC: PATH

SPEC #: 01.CE.C9717        RECD: 11/27/01 1419     STATUS: COL        REQ #: 
                          COLL: 11/27/01           SUBM DR: Kim,Ja  s J

ENTERED:  11/27/01-1419   SP TYPE: SP CEDARS       OTHR DR: Fodera  Detention C
ORDERED:    SP DECALCIFY, SP LEV II788304

CODES: T1A.00|M37000 - FIBROUS TISSUE|HEMORRHAGE, NOS
       TD0220 - SHOULDER, NOS

       M31180 - .|SEPARATION, NOS
       M78300 - .|REPAIR, NOS

COPIES TO:
   Kim,James J
   7400 N Kendall Dr #302
   Miami, FL 33156
   305-670-0232

   Federal Detention Center
   P.O. Box 019118
   Miami, FL 33101-9118
   305-982-1239

PROCEDURES:   (11/27/01-1419)
           SP DECALCIFY (11/28/01-1047)
           SP LEV II788304 (11/28/01-1047)

TISSUES:
           - DISTAL CLAVICLE AND AC JOINT RIGHT
```

**CLINICAL HISTORY-**

```
   PRE-OP DX:  AC SEPARATION RIGHT CLAVICLE
   PROCEDURE:  RESECTION AND DISTAL CLAVICLE REPAIR
```

**GROSS DESCRIPTION**

SPECIMEN CONSISTS OF THREE FRAGMENTS OF TAN PINK BONE TISSUE AND INTEG

 CE OF FIBROFATTY TISSUE 4 X 2 X 2 CM IN AGGREGATE.

FOCAL

**\*\*\*   FINAL DIAGNOSIS   \*\*\***

CONTINUED ON NEXT PAGE



**MEDICAL DUTY STATUS**
**FEDERAL CORRECTIONAL INSTITUTION MIAMI**
**MIAMI, FLORIDA**

NAME: _LUTAVEK, RANDY_   REG. NUM. _52 / 03 - 071_

UNIT:_____   DETAIL_____

PLEASE BE ADVISED THAT THE ABOVE NAMED INMATE HAS BEEN GIVEN THE FOLLOWING MEDICAL CLASSIFICATION STATUS:

_____MEDICAL IDLE  (From)_____Until_____

_____MEDICAL CONVALESCENCE (From)_____Until_____

_____MEDICALLY UNASSIGNED/ NO DUTY (From)_____Until_____

_____RESTRICTED DUTY (SPECIFY IN OTHERS)_____Until_____

_____

_____

_____REGULAR DUTY (From)_____

_✓_ OTHER: _LOWER BUNK  X 6 months_

_____

Date:_01-05-01_   Signed/Stamp:_____

**DEFINITIONS AND INSTRUCTIONS**

**MEDICAL IDLE** - Temporary restriction not to exceed three (3) days duration. Patient is to remain <u>in</u> room, leaving the area only for meals, bathroom, required pill lines, count, visits, and scheduled religious services. <u>**ALL OTHER AREAS AND ACTIVITIES ARE RESTRICTED. ABSOLUTELY NO RECREATIONAL ACTIVITY.**</u>

**MEDICAL CONVALESCENCE** - Recovery period for operation or injury, normally does not exceed fourteen (14) days, but may be longer if deemed necessary by the attending clinician. Patient is not required to work, but must remain in the dormitory during their normal working hours, except for medications, meals, visits, and scheduled religious services.  They have full institutional privileges, except for <u>**ABSOLUTELY NO RECREATIONAL ACTIVITIES**</u>.

**MEDICALLY UNASSIGNED** - Not assigned to work due to recovery from operation or injury, or due to serious medical or psychiatric illness. Full institution privileges, however, recreational activity **may or may** not be allowed, depending on the orders of the attending physician.

**REGULAR DUTY** - No restrictions to work or recreational activity.

**REGULAR DUTY WITH RESTRICTIONS** - Restricted from work around machinery, heights, heavy lifting, sports activities, etc., because of physical or mental condition. **List limitation and effective time period.**

## MEDICAL REPORT OF DUTY STATUS

NAME: Weaver Randy Anthony

HOSPITAL REGISTRATION NO.: 92903-071

ADDRESS: FDC MIAMI

| INPATIENT | INCLUSIVE DATES OF TREATMENT | | | | | |
|---|---|---|---|---|---|---|
| | From: 5/1/01 | | | To: 5/1/02 | | |
| CUTPATIENT | DATE | | TIME ARRIVED | | A.M./P.M. | TIME DEPARTED | A.M./P.M. |

| DISPOSITION | Can resume usual occupation | DATE | Can perform limited duties as specified under REMARKS | DATE |
|---|---|---|---|---|
| | To return to clinic | DATE | To be hospitalized | DATE |
| | OTHER (Specify) | | | |

REMARKS: Lower bunk permit

| NAME AND LOCATION OF HOSPITAL OR CLINIC | SIGNATURE OF MEDICAL OFFICER OR MEDICAL RECORD LIBRARIAN | DATE |
|---|---|---|
| E. EDOUARD, P.A.  FDC MIAMI | | 5/1/01 |

" ATTACHMENT THREE "

PHOTO INTRODUCED AT CRIMINAL TRIAL OF PLAINTIFF'S FACE.

( see footnote # 20)

PLAINTIFF'S ATTACHMENT THREE



PHOTO TAKEN BY LIEM BREEMAN, AFTER THE
ASSAULT ON BRIAN KLEEFOMER. LIEM BREEMAN
WITNESSED THE TAKING OF THE PHOTO

" <u>ATTACHMENT FOUR</u> "


<u>MEDICAL RECORDS-WHICH SHOW DATE OF INJURIES</u>.


( see footnote # 21)


**PLAINTIFF'S ATTACHMENT FOUR**

. Department of Justice
aral Bureau Of Prisons

# MEDICAL HISTORY REPORT

**(THIS INFORMATION IS FOR OFFICIAL AND MEDICALLY CONFIDENTIAL USE ONLY AND WILL NOT BE RELEASED TO UNAUTHORIZED PERSONS)**

| LAST NAME—FIRST NAME—MIDDLE NAME | 2. REGISTER NUMBER |
|---|---|
| *(handwritten)* | *(handwritten)* |

| PURPOSE OF EXAMINATION | 4. DATE OF EXAMINATION | 5. EXAMINING FACILITY |
|---|---|---|
| *Intake screening* | 5/1/01 | FDC MIAMI |

STATEMENT OF EXAMINEE'S PRESENT HEALTH AND MEDICATIONS CURRENTLY USED *(Follow by description of past history, if complaint arises)*

O.R.—

**7. HAVE YOU EVER** *(Please check each item)*

| YES | NO | *(Check each item)* |
|---|---|---|
| | ✓ | Lived with anyone who had tuberculosis |
| | ✓ | Coughed up blood |
| | ✓ | Bled excessively after injury or tooth extraction |
| ✓ | | Attempted suicide |
| | ✓ | Been a sleepwalker |

**8. DO YOU** *(Please check each item)*

| YES | NO | *(Check each item)* |
|---|---|---|
| | ✓ | Wear glasses or contact lenses |
| ✓ | | Have vision in both eyes |
| | ✓ | Wear a hearing aid |
| | ✓ | Stutter or stammer habitually |
| | ✓ | Wear a brace or back support |

**9. HAVE YOU EVER HAD OR HAVE YOU NOW** *(Please check at left of each item)*

| YES | NO | DON'T KNOW | *(Check each item)* | YES | NO | DON'T KNOW | *(Check each item)* | YES | NO | DON'T KNOW | *(Check each item)* |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | ✓ | Scarlet fever | ✓ | | | Adverse reaction to serum drug or medicine | ✓ | | | Epilepsy or fits |
| | ✓ | | Rheumatic fever | | | | | | ✓ | | Car, train, sea or air sickness |
| | | | Swollen or painful joints | ✓ | | | Broken bones | ✓ | | | Frequent trouble sleeping |
| ✓ | | | Frequent or severe headache | | | | Tumor, growth, cyst, cancer | | ✓ | | Depression or excessive worry |
| ✓ | | | Dizziness or fainting spells | ✓ | | | Rupture/hernia | | ✓ | | Loss of memory or amnesia |
| ✓ | | | Eye trouble | ✓ | | | Piles or rectal disease | ✓ | | | Nervous trouble of any sort |
| ✓ | | | Ear, nose, or throat trouble | ✓ | | | Frequent or painful urination | | | | Periods of unconsciousness |
| | ✓ | | Hearing loss | | | | Bed wetting since age 12 | | | | Have you ever had homosexual contact? |
| | ✓ | | Chronic or frequent colds | ✓ | | | Kidney stone or blood in urine | | | | |
| ✓ | | | Severe tooth or gum trouble | ✓ | | | Sugar or albumin in urine | | ✓ | | Been exposed to AIDS |
| ✓ | | | Sinusitis | ✓ | | | VD—Syphilis, gonorrhea, etc. | | ✓ | | Alcohol Use (Excessive) |
| | ✓ | | Hay Fever | ✓ | | | Recent gain or loss of weight | ✓ | | | Drug Use/Addiction |
| ✓ | | | Head injury | | | | Arthritis, Rheumatism, or Bursitis | | ✓ | | Marijuana |
| ✓ | | | Skin diseases | ✓ | | | Bone, joint or other deformity | ✓ | | | Cocaine |
| ✓ | | | Thyroid trouble | ✓ | | | Lameness | | ✓ | | Heroin |
| ✓ | | | Tuberculosis | ✓ | | | Loss of finger or toe | | ✓ | | L.S.D. |
| | | | Asthma | ✓ | | | Painful or "Trick" shoulder or elbow | | | | Amphetamines |
| ✓ | | | Shortness of breath | ✓ | | | Recurrent back pain | | | | Others: (Specify) |
| ✓ | | | Pain or pressure in chest | ✓ | | | "Trick" or locked knee | | | | |
| ✓ | | | Chronic cough | ✓ | | | Foot trouble | | | | Alcohol or drug |
| | | | Palpitation or pounding heart | ✓ | | | Neuritis | | | | Withdrawal Problems |
| | | | Heart trouble | ✓ | | | Paralysis (include infantile) | | | | |
| | ✓ | | High or low blood pressure | | | | | | | | |
| ✓ | | | Cramps in your legs | | | | | | | | **10. FEMALES ONLY HAVE YOU EVER** |
| ✓ | | | Frequent indigestion | | | | | | | | Been treated for a female disorder |
| ✓ | | | Stomach, liver, or intestinal trouble | | | | | ✓ | | | Had a change in menstrual pattern |
| ✓ | | | Gall bladder trouble or gallstones | | | | | | | | ARE YOU PREGNANT |
| ✓ | | | Jaundice or hepatitis | | | | | | | | SUSPECT YOU ARE PREGNANT |

| 11. WHAT IS YOUR USUAL OCCUPATION? | 12. ARE YOU *(Check one)* |
|---|---|
| *(handwritten)* | ☑ Right handed ☐ Left handed |

USP LVN | Previous editions not usable | BP-360(60) JANUARY 1986

CHECK EACH ITEM YES OR NO EVERY ITEM CHECKED YES MUST BE FULLY EXPLAINED IN BLANK SPACE BELOW

| YES | NO | | YES | NO | |
|---|---|---|---|---|---|
| | ✓ | 13. Have you been refused employment or been unable to hold a job or stay in school because of: A. Sensitivity to chemicals, dust, sunlight, etc. | | ✓ | 18. Have you ever had any illness or injury other than those already noted? (If yes, specify when, where, and give details.) |
| | ✓ | B. Inability to perform certain motions. | | ✓ | 19. Have you consulted or been treated by clinics, physicians, healers, or other practitioners within the past 5 years for other than minor illnesses? (If yes, give complete address of doctor, hospital clinic, and details.) |
| | ✓ | C. Inability to assume certain positions. | | | |
| ✓ | | D. Other medical reasons (If yes, give reasons.) | | ✓ | 20. Have you ever been rejected for military service because of physical, mental, or other reason? (If yes, give date, and reason, for rejections.) |
| ✓ | | 14. Have you ever been treated for a mental condition? (If yes, specify when, where, and give details.) | | | |
| | ✓ | 15. Have you ever been denied life insurance? (If yes, state reason and give details.) | | ✓ | 21. Have you ever been discharged from military service because of physical, mental, or other reasons? (If yes, give date, reason, and type of discharge whether honorable, other than honorable, for un- fitness or unsuitability.) |
| ✓ | | 16. Have you had, or have you been advised to have, any opera- tions? (If yes, describe and give age at which occured.) | | | |
| ✓ | | 17. Have you ever been a patient in any type of hospital? (If yes, specify when, where, why, and name of doctor and complete address of hospital.) | ✓ | | 22. Have you ever received, is there pending, or have you applied for pension, or compensation for existing disability? (If yes, specify what kind, granted by whom , and what amount, when, why.) |

EXPLANATION: (#13-22 ABOVE)
13-0 Epilepsy
14- several times
16- shot in chest "96"
17- when shot, Brain cyst,
19- still have unoticed Broken nose, Dislocated (R) shoulder

19- Doctor note, Dislocated Shoulder
20- Because of fines petition when Juvenile.
22- Have received SSI & Disability in the past.

I certify that I have reviewed the foregoing information supplied by me and that it is true and complete to the best of my knowledge. I authorize any of the doctors, hospitals, or clinics mentioned above to furnish the Government a complete transcript of my medical record.

TYPED OR PRINTED NAME OF EXAMINEE
Randy Anthony Weaire

SIGNATURE
Randy Anthony Weaire

INTAKE SCREENING:

INMATE RECEIVED FROM: COURT ____ TRANSFER ✓ P.V. ____
OTHER ____

MEDICAL STAFF'S COMMENTS AND OBSERVATIONS: PLEASE DIRECT YOUR ANSWERS TO MENTAL-STATUS, POTENTIAL SUICIDE, APPEARANCE, CONDUCT, STATE OF CONSCIOUSNESS, RASHES, JAUNDICE, BRUISES AND/OR MARKS, SWEATING, BODY DEFORM- ITIES, ETC. NOTE OBSERVATIONS IN BLOCK 23 BELOW.

IF DRUGS HAVE BEEN USED, NOTE TYPE, HOW LONG, HOW MUCH, HOW OFTEN, HOW USED. WHEN WERE THEY LAST USED: HAVE

THERE BEEN ANY PROBLEMS SINCE STOPPING THE USE OF DRUGS OR ALCOHOL? ____ no ____

DOES PATIENT NEED TO BE SEEN IMMEDIATELY BY THE MEDICAL STAFF YES ____ NO ✓
WHAT ARRANGEMENTS HAVE BEEN MADE? ____

DUTY STATUS: TEMPORARY WORK ____ RESTRICTED ✓ ____
GENERAL POPULATION ✓ YES ____ NO ____
TYPE AND EXTENT OF LIMITATION ____

23. Physician's summary and elaboration of all pertinent data (Physician shall comment on all positive answers in item 6 through 22. Physician may develop by interview any additional medical history he deems important, and record any significant findings here.)

① (R) shoulder sub luxation } since June 2000
Deviated Nasal septum. } 2° to Physical assa...

② seizure disorder.

③ Hx of depression. No current Tx. No suicidal th...

④ bry Laparotomy in 1986 2° to GSW.

⑤ Hx of drug used. No withdrawal sympton...

E. EDOUARD, P.A.
FDC MIAMI

| TYPED OR PRINTED NAME OF PHYSICIAN OR EXAMINER | DATE | SIGNATURE | NUMBER OF ATTACHED SHEETS |
|---|---|---|---|
| BP149 REVIEWED OK FOR TRANSFER | 5/ | | |

REVERSE

SN 7540-00-634-4176

AUTHORIZED FOR LOCAL REPRODUCTION

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |

INTAKE   SCREENING FORM

7/1/01
1945

S:  Explain any history of the following

Allergies  *Penicillin / Codeine*          Hepatitis  *no*.

Alcohol/ Drug Use or Withdrawal  *no*

Tuberculosis, Exposure to TB, or Positive PPD Test  *no*

Any STD ( Syphilis, Gonorrhea, Chlamydia)  *no*.

Any Infectious Disease, HIV:   *no*.

Mental Disease, Suicidal Thoughts, Gestures or Attempts  *Hx of depression
in 1989. No current Tx. No suicidal thoughts*

Important Surgical or Medical History......Medications  *seizure disorder
since 1991. currently on dilantin 200 mg BID.
(R) shoulder subluxation since June 2000. Pending*

History of Rape or Assault  *surgery. Deviated Nasal
septum since June 2000. 2° to physical
assault. exp laparotomy in 1986 2° to
GSW.*

FEMALE:  G    P    Ab    LMP

| HOSPITAL OR MEDICAL FACILITY | | STATUS | | DEPART./SERVICE | | RECORDS MAINTAINED AT |
|---|---|---|---|---|---|---|
| SPOI | | | | RELATIONSHIP TO SPONSOR | | |
| PATI | | | | ID No or SSN; Sex; | REGISTER NO. | WARD NO. |

WEAVER
  RANDY ANTHONY          92903-071
W/M/O/07-26-1964
HT/510    WT/150    HR/BN    EY/HL
CUSTODY/IN

**CHRONOLOGICAL RECORD OF MEDICAL CARE**
Medical Record
**STANDARD FORM 600** (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

" <u>ATTACHMENT FIVE</u> "


<u>COPY OF TRANSIT DOCUMENT'S.</u>


( see footnote # 22)


PLAINTIFF'S ATTACHMENT FIVE

BP-S149.060 **MEDICAL RECORD OF FEDERAL PRISONER IN TRANSIT** CDFRM
JUL 96

**U.S. DEPARTMENT OF JUSTICE**        **FEDERAL BUREAU OF PRISONS**

| TB Clearance | |
| --- | --- |
| PPD Completed: 1-11-01 | Date |
| Results: 0 mm | |
| Interpreted as: negative | (Positive or Negative) |
| CXR Completed: | (Date) |
| Results: | |

Note: Date(s) listed above must be within one year of this transfer.

No inmate may be transferred to any BOP facility unless either PPD or CXR results are satisfactory for medical clearance.

Name: WEAVER, RANDY ANTHONY    Reg. No. 92903-071

Departed From: FDC MIAMI    Date Departed: 5-4-00

Destination: FTL     Reason for Transfer: non medical
     Name of Institution

Special Instructions: Blood and Body Fluid Precautions

     Allergic to PENICILLIN & CODEINE

     lower bunk, no machineries

Diagnoses:
1. Hx Seizure Disorder    4. Deviated nasal septum
2. Hx Depression, no meds    5.
3. Hx Subluxation, Right shoulder

**MEDICATION FOR CARE ENROUTE**

| Medication | Dose | Route | Instructions for Use (Include proper time for administering) | Stop |
| --- | --- | --- | --- | --- |
| Phenytoin sodium extended capsule | 100mg | po | take 2 capsules by mouth twice daily at 7am-7pm<br># 28 | indef. |
| | | | | |
| | | | | |

## SENSITIVE-LOU

| Signature of Certifying Medical Staff Member | Title | Date Signed |
| --- | --- | --- |
| P. PANGILINAN, P.A.<br>F.D.C. MIAMI | Physician Assistant | 5-4-01 |

**PROGRESS NOTES ENROUTE**

| Date | Time | Institution | Symptoms, Findings, Medications, Treatment, Order, Etc. |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | Attach SF-600 if additional space is required. |

Record copy - Transporting Officer; Copy - Health Record (Top page, Position one); Copy - Transferring institution

(This form may be replicated via WP)      This form replaces BP-149.060 and BP-S149.060 dtd Nov 1994



BP-S149.060 **MEDICAL RECORD OF FEDERAL PRISONER IN TRANSIT** CDFRM
JUL 96
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TB Clearance | | |
|---|---|---|
| PPD Completed: 1-11-01 | Name: **WEAVER, RANDY ANTHONY** | Reg. No. **92903-071** |
| Results: 0  mm | Departed From: **FDC  MIAMI** | Date Departed: **5-8-01** |
| Interpreted as: negative | Destination: **FTL** | Reason for Transfer: **non medical** |

**Name of Institution**

Special Instructions: <u>Blood and Body Fluid Precautions</u>
**allergic to PENICILLIN & CODEINE**
**lower bunk, no machineries**

CXR Completed: ___ (Date)
Results: ___

Note: Date(s) listed above must be within one year of this transfer.

Diagnoses:
1. **Hx Seizure disorder**          4. **Deviated nasal septum**
2. **Hx Depression, no meds**        5.
3. **Hx subluxation, right shoulder**

No inmate may be transferred to any BOP facility unless either PPD or CXR results are satisfactory for medical clearance.

**MEDICATION FOR CARE ENROUTE**

| Medication | Dose | Route | Instructions for Use (Include proper time for administering) | Stop |
|---|---|---|---|---|
| Phenytoin sodium extended capsule | 100mg | po | take 2 capsules by mouth twice daily at 7am-7pm   # 28 | indef. |

SENSITIVE-LOU

| Signature of Certifying Medical Staff Member | Title | Date Signed |
|---|---|---|
| P. PANGILINAN, P.A.  F.D.C. MIAMI | Physician Assistant | 5-8-01 |

**PROGRESS NOTES ENROUTE**

| Date | Time | Institution | Symptoms, Findings, Medications, Treatment, Order, Etc. |
|---|---|---|---|
| | | | |

Attach SF-600 if additional space is required.




BP-S149.060 **MEDICAL RECORD OF FEDERAL PRISONER IN TRANSIT** CDFRM
JUL 96
**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

| TB Clearance | |
| --- | --- |
| PPD Completed: _1/11/01_ /Date | |
| Results: _0_ mm | |
| Interpreted as: _NEG_ (Positive or Negative) | |
| CXR Completed: ____ (Date) | |
| Results: ____ | |
| Note: Date(s) listed above must be within one year of this transfer. | |

No inmate may be transferred to any BOP facility unless either PPD or CXR results are satisfactory for medical clearance.

Name: _MIQUEL ANTHONY_    Reg. No. _92.903-017_

Departed From: _MIA_

Destination: _USMS_    Reason for Transfer: _W-NEG_
    Name of Institution

Special Instructions: **Blood and Body Fluid Precautions**

Diagnoses: 1. _Seizure Disorder_

2. _Deviated Septum_

3. ____    6. ____

MEDICATION FOR CARE ENROUTE

| Medication | Dose | Route | Instructions for Use (Include proper time for administering) | Stop |
| --- | --- | --- | --- | --- |
| _PHENYTOIN SODIUM (Dilantin) TAKE (1) capsule twice a_ | | | _Day 7AM-7PM #14_ | _1/22/01_ |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Signature of Certifying Medical Staff Member | Title | Date Signed |
| --- | --- | --- |
| | S. ORELLANA, AHSA | |

PROGRESS NOTES ENROUTE

| Date | Time | Institution | Symptoms, Findings, Medications, Treatment, Order, Etc. |
| --- | --- | --- | --- |
| | | | |

SENSITIVE-LOU

Attach SF-600 if additional space is required.

Record copy - Transporting Officer; Copy - Health Record (Top page, Position one); Copy - Transferring institution

(This form may be replicated via WP)     This form replaces BP-149.060 and BP-S149.060 dtd Nov 1994



BP-S149.060 **MEDICAL RECORD OF FEDERAL PRISONER IN TRANSIT** CDFRM
JUL 96
**U.S. DEPARTMENT OF JUSTICE**                         **FEDERAL BUREAU OF PRISONS**

**TB Clearance**

PPD Completed: **1-11-01**
            Date

Results: **0**    mm

Interpreted as: **negative**
(Positive or Negative)

CXR Completed: _____
          (Date)

Results: _____

Note: Date(s) listed above must be within one year of this transfer.

No inmate may be transferred to any BOP facility unless either PPD or CXR results are satisfactory for medical clearance.

Name: **WEAVER, RANDY ANTHONY**   Reg. No. **92903-071**

         **FDC  MIAMI**

Departed From: _____   Date Departed: **5-23-01**

         **FTL**

Destination: _____   Reason for Transfer: **non medical**
      Name of Institution

Special Instructions: **Blood and Body Fluid Precautions**
      **Allergic to PENICILLIN & CODEINE**

      **lower bunk, no machineries**

Diagnoses: 1. **Seizure disorder**   4.
      2. **Deviated nasal septum**   5.
      3. **Hx Depression, no meds**   6.

**MEDICATION FOR CARE ENROUTE**

| Medication | Dose | Route | Instructions for Use (Include proper time for administering) | Stop |
|---|---|---|---|---|
| Phenytoin sodium extended capsule | 100mg | po | take 2 capsules by mouth twice daily at 7am-7pm  # 28 | indef. |

**SENSITIVE-LOU**

Signature of Certifying Medical Staff Member: P. PANGILINAN, P.A. / F.D.C. MIAMI

Title: **Physician Assistant**   Date Signed: **5-23-01**

**PROGRESS NOTES ENROUTE**

| Date | Time | Institution | Symptoms, Findings, Medications, Treatment, Order, Etc. |
|---|---|---|---|
|  |  |  |  |

Attach SF-600 if additional space is required.

Record copy - Transporting Officer; Copy - Health Record (Top page, Position one); Copy - Transferring institution

(This form may be replicated via WP)

This form replaces BP-149.060 and BP-S149.060 dtd Nov 199/



" <u>ATTACHMENT SIX</u> "


<u>COPIES OF LETTER'S TO/FROM AGENCIES.</u>


( see footnote # 23)


**PLAINTIFF'S ATTACHMENT SIX**

To: The Office of the United States
    Office of Professional Responsibilties
    United States Justice Department
    Washington, D.C. 20543


From: Mr. Randy Anthony Weaver
    # 92903-071
    Federal Correctional Institution
    P.O. Box 779800
    Miami, Florida    33177


RE: Request for investigation into
    physical assault by U.S. Marshals
    while handcuffed and shackled inside
    a Federal Courthouse.


Dear Sir/Madam;                                    January 18,2001.

        This letter is in reference to the assault that occurred
to me while in the custody of the United States Marshals Office
for the Southern District of Florida. Said assault did take place
on the 28th day of June, 2000, inside the Federal Courthouse in
Fort Lauderdale, Florida, and was recorded by numerous camera's
that were stationed throughout the building.(See attached diagram,
and specs for said camera's including their angle view, range, etc.,
and also an attached statement from the manufacture of said
camera's as to their reliability)
        I have begun to prepare a Civil Action to also be filed
in this matter, along with the filing of Criminal charges against
those involved, not only in the assault, but in the cover-up of
injuries as well. I would request that this office investigate
this matter, and provide a copy of it's findings to Plaintiff's
counsel, Mr. Johnnie Cochran, and Mr. F.Lee Bailey.
        Also, please find included with this letter, all the
information necessary to review this information through the
use of medical records, statements, places where the Plaintiff
was shipped to cover-up said injuries, etc.
        In the event that this office requires additional
information, please feel free to contact me at the following
address, and also to contact the following agencies that have
become aware of this matter as well.


    Mr. Randy Anthony Weaver
        4810 N.W. 77th Court
        Pompano Beach, Florida
                33073                        Sincerely Yours,

                                            Randy Anthony Weaver
    Mr. Richard Marris, Esq.,
        Attorney-at-law
        317 Montgomery Street
        Syracuse, New York  13204

To: The Federal Bureau of Investigation
    Ninth St. & Penn. Ave, N.W.
    Washington, D.C. 20003

From: Mr. Randy Anthony  Weaver
      # 92903-071
      Federal Detention Center
      P.O. Box 019120
      Miami, Florida 33101-9120

*Xx please Return photo Copy of Original Cover Letter and Transmittal Slip from Capt. Imberti of the Ft. Lauderdale Police Department!*

RE: REQUEST TO FILE CRIMINAL CHARGES OF ASSAULT
    AGAINST U.S. MARSHALS FOR ASSAULT WHILE ON
    FEDERAL PROPERTY.

Dear Sir/Madam;                                          July 12, 2001.

     This letter is  n reference to my desire to pursue the filing of criminal

charges of assault against United States Deputy Marshal Michael Gloetzner and

Deputy Marshal James Meehan of the Fort Lauderdale, Florida marshal office. As

you will notice from the enclosed documents, I have been constantly trying to file

these charges through local State Law Enforcement, but, due to the fact that the

assault occured on Federal property, and inside a Federal Courthouse, the State

has informed me that this office has sole jurisdiction in this matter.

     This  ssault in question  happen  n June 13,2000,  nd I have been in contact with

the State Attorneys Office in Fort Lauderdale on several occassions, as far back as

early or mid November, 2000. I have also brought this matter to the attention of the

U.S. Justice Department, the U.S. Inspector Generals Office, as well as numerous other

State authorities.

     Most of the exhibits that you will see, you'll notice have been assigned a

civil exhibit number, as I have commenced Civil Action already in relation to this

incident. As you will also see, that on several occasions, even though I was being

bounced around from place to place, I still managed to seek medical treatment for the

injuries that I incurred during, and as a direct result of said assault.

     The cover page is that of a response from the Capt of the Fort Lauderdale Police

Department, in which a Detective Sargent T. Falk conduct an investigation in  his

-1-

matter, based upon that investigation a report was forwarded to the Capt for his view.

As you will notice from the cover-page, the Capt states that, " after careful review of the facts in your case, it has been determined that the Federal Bureau of Investigation has jurisdiction in this matter, since the alleged incident occurred on federal property by federal officers, while your were in thier custody". And so, I now file those documents along with a copy of the Civil Action filed in this matter in U.S. District Court in Miami, Florida, with your office.

I would ask that this office review the enclosed material, and the documents presented with it, and lodge an investigation into this matter to determine if the filing of criminal charges is warranted in this matter. I believe the exhibits are very self-explainatory in nature, and would be willing to meet with whatever authorities that I have to, to see that this matter is properly pursued through all the right legal channels.

I am represented by Mr. Scott Sakin, P.A. (305) 545-0007, and have been trying to forward a copy of this matter to Mr. Johnnie Cochran for his consideration in becoming involved at the civil level. I do have proof that these two same Marshals have even harrassed and stalked the young lady I was engaged to, and have even gotten her so afraid that she is in a ding now for fear of what these to Marshals will do if she were to testify on my behalf. That proof is in the form of a letter from her written to me, and also she has even informed others of these threats by the Marshals.

Her (fiance' at the time) comments were also stated to me while here at the Federal Detention Center over the phone, and I have informed my attorney of this, as well as informed the U.S. District Court, requesting that the tape of said call be held as proof to show the reason for the threats of bodily harm or death if she were to testify.

Please feel free to contact me in the event you need additional information regarding this matter.

Sincerely yours,

Randy Anthony Weaver

c/ S. S. Sakin
U.S. District Court

-2-



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D.C. 20535-0001

October 2, 2001

Mr. Randy Anthony Weaver, #02903-071
Federal Detention Center
Post Office Box 019120
Miami, Florida 33101-9120

Dear Mr. Weaver:

I am writing in response to your correspondence
addressed to the FBI.

A representative of the FBI's Miami Office will
contact you in the near future to obtain additional details
regarding the matter. Thereafter, the information you provide,
as well as an investigation conducted relative to your
complaint, will be referred to the Civil Rights Division,
Department of Justice, for its prosecutive opinion. That
Division has the final authority regarding federal prosecutive
action in civil rights matters.

Sincerely yours,

Thomas A. Reynolds
Chief, Civil Rights Unit
Criminal Investigative Division



[illegible] [illegible] INVESTIGATIVE [illegible]

[illegible] [illegible] 7 [illegible]

[illegible] A [illegible]

[illegible]03 ( )

FEDERAL CORRECTIONAL INSTITUTION

P.O. BOX [illegible]

MIAMI FL [illegible] 33177

RE: [illegible]

Dear [illegible];

April 16, 01

IN REFERENCE TO THE ENCLOSED DOCUMENT [illegible] THE INVESTIGATIVE [illegible] THAT ON [illegible] 2001 [illegible] (THE DEFENDANTS) DID REMOVE THE [illegible] PAGE OF [illegible] AN [illegible] WITNESSED PLACING SAID DOCUMENT [illegible] [illegible] TO [illegible] [illegible] HE DID NOT RETURN WITH SAID DOCUMENT.

IT MAY BE VERY WELL POSSIBLE, THAT [illegible] [illegible] BEEN [illegible] [illegible] INVOLVED [illegible] ASSAULT [illegible] I HAVE [illegible]

[illegible]

CITY OF
# FORT LAUDERDALE

*Venice of America*

April 24, 2001

Mr. Randy A. Weaver
# 92903-071
Federal Correctional Institution
P.O. Box 779800
Miami, FL 33177

Dear Mr. Weaver:

Please find enclosed the information you forwarded to the felony assault division of the Fort Lauderdale Police Department.

After careful review of the facts of your case, it has been determined that the Federal Bureau of Investigation has jurisdiction in this matter, since the alleged incident occurred on federal property by federal officers, while your were in their custody.

Sincerely,

Captain Robert F. Lamberti
Criminal Investigations Division

RFL:TJF:tsr

**POLICE DEPARTMENT**
1300 West Broward Boulevard, Fort Lauderdale, Florida 33312
TELEPHONE (954) 828-5700, FAX (954) 828-5001

EQUAL OPPORTUNITY EMPLOYER                                    PRINTED ON RECYCLED PAPER 



CIVIL EXHIBIT "AS-03"

**MICHAEL J. SATZ**
**STATE ATTORNEY**
SEVENTEENTH JUDICIAL CIRCUIT OF FLORIDA
BROWARD COUNTY COURTHOUSE
201 S E  SIXTH STREET
FORT LAUDERDALE, FL 33301-3360

PHONE (954) 831-6955

March 19, 2001

Mr. Randy A. Weaver
# 92903-071
Federal Correctional Institution
P O  Box 779800
Miami, Florida  33177

Dear Mr  Weaver,

With  reference to your letter of February 25th the address of the Fort Lauderdale Police
Department is as follows

> Fort Lauderdale Police Department
> 1300 W. Broward Boulevard
> Fort Lauderdale, Florida  33312

This office will conduct a timely legal review of any felony investigation presented by a
professional law enforcement agency acting within Broward County, Florida

Sincerely,

EDWARD J  WALSH
Assistant State Attorney
Supervisor, Felony Case Filing

cc  Michael J  Satz
Admin  Ref  #01-034

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Randy Anthony Weaver,

         Petitioner,          CAUSE NUMBER: _____

VS.

                    "AFFIDAVIT IN SUPPORT OF

                    PETITIONER'S MOTION FOR AN

Larry Powers, et. al.,       EMERGENCY INJUNCTIVE RELIEF

        RESPONDANT(S).     ORDER IN CIVIL ACTION."

✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗ ✗

# COMES NOW, RANDY ANTHONY WEAVER, THE PETITIONER IN THE

ABOVE-CAPTIONED MATTER DOES HEREBY MOVE THIS HONORABLE COURT FOR AN

ORDER GRANTING IMMEDIATE "EMERGENCY INJUNCTIVE RELIEF", PURSUANT

TO THE FEDERAL RULES OF CIVIL PROCEDURE. THE PETITIONER WOULD

STATE THAT THIS COURT INVOKE IT'S JUDICAL AUTHORITY IN THIS MATTER, AS

IT INVOLVES AN ASSAULT BY U.S. MARSHALLS ON FEDERAL PROPERTY.

IT IS FURTHER STATED, THAT THIS PETITIONER DID FILE A NOTICE TO

SEEK CIVIL ACTION ON THE 29TH DAY OF JUNE, 2000. WITH THE HONORABLE

U.S. DISTRICT COURT IN SOUTHERN FLORIDA. AT WHICH TIME PETITIONER

SOUGHT AN "EMERGENCY INJUNCTIVE" ORDER THEN BUT WAS TRANSFERRED

BEFORE PETITIONER ~~COULD~~ BE HEARD, OR RECEIVE A RULING.

# WHEREFORE, PETITIONER PRAYS ~~THAT THE~~ COURT WILL ORDER

THAT THE CLERK OF THIS COURT DO FORTHWITH ISSUE AN ORDER FOR

"EMERGENCY INJUNCTIVE RELIEF", PREVENTING ANY AND ALL FORMS OF

RETALIATION AGAINST THIS PETITIONER OR PETITIONER'S COMMON LAW WIFE, LISSETTE DIAZ (WEAVER). AND, THAT THIS MATTER BE PLACED ON THE COURT DOCKET AT THIS COURTS EARLIEST CONVIENCE SO THAT PETITIONER MAY BE HEARD.

I THANK THIS HONORABLE COURT IN ADVANCE FOR IT'S TIME AND CONSIDERATION IN THE ABOVE CAPTION MATTER. IN SUPPORT OF SAID MOTION THE PETITIONER DULY STATES, TO WIT:

(1). THAT ON THE 28th DAY OF JUNE, 2000, THIS PETITIONER WAS PHYSICALLY ASSAULTED BY AGENTS ACTING UNDER "COLOR OF LAW" ON FEDERAL PROPERTY, AND IN VIOLATION: 18 U.S.C. § 242, AND SUPPORTED THEREBY IN U.S. V. JACKSON, 235 F.2d 925 (7th cir. 1976); U.S. V. WALKER, 216 F.2d 683 (7th cir. 1954); U.S. V. JONES, 207 F.2d 785 (5th cir 1953), THAT SAID ASSAULT WAS A VIOLATION OF FEDERAL, STATE, AND LOCAL LAWS, AND;

(2). THAT ON THE 29th DAY OF JUNE, 2000, THIS PETITIONER DID FILE WITH THE HONORABLE U.S. DISTRICT COURT, A MOTION TO PROCEED WITH CIVIL ACTION; AND,

(3). THAT THE RESPONDANT(S) HAVE CONSPIRED TOGETHER TO COVER-UP THAT PETITIONER WAS ASSAULTED, AND THAT THE PETITIONER HAS PROOF OF THIS, AND;

(4). THAT FROM DATE OF ASSAULT, JUNE 28, 2000, TILL PRESENT THE PETITIONER HAS ONLY RECEIVED AN

X-RAY OF INJURIES (ON JULY 26, 2000 @ SPARTANBURG REGIONAL MEDICAL CENTER) AND THEN A TRIP TO THE SPARTANBURG EAR, NOSE AND THROAT HEAD AND NECK SURGERY CLINIC, WHERE A DR. HURST SCHEDULED SURGERY (BECAUSE INJURY IS EFFECTING BREATHING OF THIS PETITIONER), AND;

(5). THAT THE SPARTANBURG COUNTY DETENTION CENTER CONSPIRING WITH THE U.S. MARSHAL'S OFFICE OF SOUTH CAROLINA, AND THE SPARTANBURG REGIONAL HEALTH CARE SYSTEM(S), AND OTHERS DID INTENTIONALLY OBSTRUCT THE PROPER FILING OF THIS DOCUMENT AND CIVIL ACTION BY TAMPERING WITH U.S. MAIL, AND FAILURE TO PRODUCE MEDICAL RECORD'S FOR EXPERT OPINIONS; AND,

(6). THAT THE U.S. MARSHAL'S OFFICE, ESPECIALLY DEPUTIES, JAMES MEEHAN. AND MIKE G. (LAST NAME UNKNOWN) DID INFACT CONSPIRE WITH THE FEDERAL BUREAU OF PRISON'S, THE U.S. MARSHAL'S OFFICE FOR SOUTH CAROLINA, AND OTHER RESPONDANT'S TO CONCEAL THE PETITIONER'S INJURIES; HINDER COMMUNICATION BETWEEN PETITIONER AND WIFE (KNOWING PETITIONER HAS NO-ONE ELSE), AND PREVENT PETITIONER FROM RECEIVING ADEQUATE AND PROPER MEDICAL TREATMENT. WIFE IS INJOINED AS PLAINTIFF. AND;

(7). THAT, EVEN AFTER RECEIVING MEDICAL PROOF OF SAID INJURIES, AND MEDICAL REPORTS, THE RESPONDANT(S) DID CONSPIRE FURTHER AND PREVENT THIS PETITIONER FROM

RECEIVING NECESSARY MEDICAL TREATMENT.

(5) THAT THIS PETITIONER, PETITIONER'S WIFE HAVE ON NUMEROUS OCCASION(S) ATTEMPTED TO RECEIVE COPIES OF ALL MEDICAL RECORD'S REGARDING ANY TREATMENTS, MEDICATIONS, HOSPITAL VISITS, ETC., FROM RESPONDANT(S) AND RESPONDANT(S) HAVE DENIED REQUEST. EVEN AFTER THE REQUEST WAS MADE PURSUANT TO THE FREEDOM OF INFORMATION ACT (F.O.I.A).

THEREBY INTENTIONALLY OBSTRUCTING OR IMPEDING THE JUDICIAL SYSTEM, AND DENYING PETITIONER HIS RIGHTS TO DUE PROCESS, CRUEL AND UNUSUAL PUNISHMENT, AND OTHER STATE AND FEDERAL LAWS NOT YET KNOWN TO THIS PETITIONER.

WHEREFORE, IN VIEW OF THE FACT THAT EVERY RESPONDANT/ DEFENDANT HEREIN NAMED IS CAPABLE OF, AND BASED ON THEIR ACTION(S) ALREADY, WOULD CONSPIRE TO RETALIATE AGAINST THIS PETITIONER OR PETITIONER'S WIFE (LISSETTE DIAZ-WEAVER) THIS PETITIONER WOULD RESPECTFULLY REQUEST AND PLEAD WITH THIS HONORABLE COURT TO ISSUE AN "ORDER" PREVENTING ANY SUCH RETALIATION.

I THANK THIS HONORABLE COURT IN ADVANCE FOR IT'S TIME AND CONSIDERATION IN THE AFORE-MENTIONED MATTER.

DATED THIS 3rd DAY OF SEPTEMBER, 2000.

CC: RAW

ENCLOSURE(S)/EXHIBIT(S)

RESPECTFULLY SUBMITTED,

Randy Anthony Weaver

RANDY ANTHONY WEAVER

PRO SÉ

PAGE (4) OF (4)

TO: THE HONORABLE CHIEF JUSTICE

UNITED STATES SUPREME COURT

U.S. SUPREME COURT HOUSE

WASHINGTON, D.C. 20534

CIVIL EXHIBIT #:

"SC-01"

RE: EMERGENCY REQUEST FOR ORDER TO COMPEL U.S. DISTRICT COURT TO RULE ON PRO SE MOTION(S), AND TO GRANT/ACCEPT "NOTICE OF APPEAL"



RECEIVED

NOV 13 2000

OFFICE OF THE CLERK
SUPREME COURT, U.S.

DEAR HONORABLE SIR/MADAM;                    OCTOBER 26, 2000

Due to the blatant disregard by the U.S. District Court for the Southern District of Florida (Ft. Laud), and the U.S. Atty's office as well as other's, this petitioner has been denied his Constitutionally protected rights to a fair and speedy disposition as well as his right to due process.

Petitioner was apprehended in Pompano Beach Florida on the 22nd day of June, 2000, for a "violation of supervised release". At time of arrest, plaintiff was residing with a law enforcement official, when all of a sudden his door gets kicked open. (Which was locked) This occurred at approx 6:58 am. Without any knock or identification, two individuals pointed what appeared to be 9mm hand guns at this petitioner, and ordered him to lay face first on his bed. At that time, plaintiff was completely without any clothes on, as he was getting ready to take a shower.

Upon placing handcuff's on petitioner, petitioner demanded (3) three seperate occasions for individual's to produce a "warrant for plaintiff's arrest". They failed to produce any such warrant! Then

PAGE (1) OF (6)

WITHOUT ANY CONSENT, OR PRODUCTION OF ANY FORM OF WARRANT, INDIVIDUAL KNOWN TO ME AS MIKE G. BEGAN TO SEARCH THROUGH MY DESK DRAWER, (WHICH WAS CLOSED). WHEN CONFRONTED AS TO WHY HE WAS DOING THAT HE STATED "LOOKING FOR THINGS TO PROVE YOUR IDENTITY". HE TOOK MY S.C. DRIVER'S LICENSE. HE THEN WENT INTO MY BATHROOM AND REMOVED MY CELL PHONE AND TOOK THAT WITH HIM. I WAS THEN GIVEN CLOTHES TO PUT ON, AND TRANSFERRED TO THE U.S MARSHAL'S OFFICE IN FT. LAUDERDALE FLORIDA.

APPROX AROUND 9:30 AM, I WAS BROUGHT BEFORE THE HONORABLE MAGISTRATE JUDGE LURANA SNOW, AND WAS APPOINTED MR. SAM SMARGON A.F.P.D. HE VERY BRIEFLY CONFRONTED ME, AND I REQUESTED THAT HE MOVE FOR A RULE (20)(b) MOTION. HE NEVER EVEN PROFFERRED SAID MOTION TO THE COURT. THE COURT UPON MOTION FROM THE GOV'T ORDERED ME HELD IN CUSTODY, WITHOUT HOLDING A PROPER DETENTION HEARING. AT THAT POINT, I REQUESTED THAT AN IDENTITY HEARING BE HELD IN THIS MATTER. PETITIONER WAS TRANSFERRED TO THE FEDERAL DETENTION CENTER (F.D.C.) MIAMI, FLORIDA.

ON OR ABOUT THE 26TH DAY OF JUNE, 2000, A MR. BERNALDO LOPEZ (A.F.P.D.) ASST. FEDERAL PUBLIC DEFENDER CAME TO SEE PETITIONER AT JAIL. AT THIS VISIT, PETITIONER PRESENTED ISSUE'S TO COUNSEL THAT WOULD PROVE THAT MY ARREST WAS ILLEGAL, AND DETENTION ORDER BY MAGISTRATE WAS ILLEGAL. I ALSO GAVE HIM (LOPEZ) (3) THREE TYPED MOTION'S AND REQUESTED THAT HE FILE THEM. THOSE BEING:

(1) MOTION TO QUASH ARREST WARRANT

(2). MOTION TO CHALLENGE DETENTION ORDER OF MAGISTRATE JUDGE

(3). MOTION FOR SUPPRESSION OF ALL PROPERTY SEIZED WITHOUT A SEARCH WARRANT.

COUNSEL STIPULATED THAT HE'D "TAKE CARE OF IT".

ON JUNE 28, 2000, I WAS BROUGHT TO THE FT. LAUDERDALE MARSHAL'S OFFICE TO AWAIT A 10:30 AM IDENTITY HEARING. I WAS HANDCUFFED AND ESCORTED BY THE TWO INDIVIDUALS WHO HAD ARRESTED ME, AND ON THE WAY TO THE COURTROOM THEY (MIKE G.) REMOVED A WHITE ENVELOPE FROM MY POCKET WITH THE WORDS "LEGAL MOTION(S)" ON THE OUTSIDE OF ENVELOPE. I INFORMED THEM (MARSHAL'S) THAT IT WAS LEGAL MAIL, AND THAT WE (MY ATTY AND I) WERE PLANNING ON ATTACKING THEIR ARREST. I ALSO INFORMED THEM THAT I WAS AWARE OF THE FACT THAT THEY RETURNED TO MY RESIDENCE HOURS AFTER MY ARREST, AND SEARCHED MY RESIDENCE WITHOUT A SEARCH WARRANT!

ONCE DOWN TO THE HOLDING CELL AREA, MIKE G. REMOVED A (5) PAGE LETTER TO MY WIFE AND SAYS "OH, WHAT'S THIS, YOU CAN'T HAVE YOUR ATTY PASSING LETTERS FOR YOU". HE THEN CONTINUES TO READ THE MOTIONS COMPLETELY AND DISCUSSED THE MATTER WITH HIS PARTNER JAMES MEEHAN. JUST PRIOR TO GOING INTO THE COURTROOM HE HANDED ME BACK THE ENVELOPE AND STATED "YOU BETTER NOT SAY A WORD, I'LL BE SITTING RIGHT BEHIND YOU."

IMMEDIATELY UPON ENTERING THE COURTROOM, I INFORMED MY ATTY (LERER), AND POINTED HIM OUT AS HE WALKED PAST ME. HE SAT BEHIND ME AND SMIRKING AND TAUNTING ME, AS I WOULD TRY TO LOOK AT MY WIFE!

DURN THE HEARING A U.S.P.O. (U.S. PROBATION OFFICER), JENNIFER SPEAR TOOK THE STAND AND STATED THAT I WAS IN FACT THE PERSON WANTED IN SOUTH CAROLINA FOR A VIOLATION. BUT, YET SHE HAD NEVER SEEN ME NOR MET ME BEFORE. THEN, WITHOUT ANY OBJECTION BY A.F.P.D. LERER, THE GOVERNMENT ENTERED INTO RECORD A PHOTO OF SOME INDIVIDUAL TAKEN DURN A BOOKING PROCESS. THE HONORABLE MAGISTRATE SNOW, EXPRESSION SOME DOUBTS ABOUT THAT INDIVIDUAL AND ME BEING THE SAME PERSON.

PAGE (3) OF (5)

THEN THE GOVERNMENT WAS ALLOWED TO ENTER INTO RECORD THE

"ILLEGALLY SEIZED" Driver's License THAT WAS Taken By Mike G. From my Residence on June 22, 2000.

THE court HAD NO CHOICE But To FIND ME AND THE person on THE Driver's License TO BE THE person IN QUESTION. DEFENSE Counsel NEVER OBJECTED TO THE ENTRY of THE Driver's License, NEVER CONTESTED even THE ENTRY OF THE First Photo, AND NEVER ADDRESSED THE ISSUE'S of my ARREST Warrant, DETENTION ORDER, OR SUPPRESSION motion, even though I HAD Just BROUGHT THE Same with me To Court Again. Court ORDERED ME TRANSFERRED Back TO SOUTH CAROLINA! Once outside THE Court-Room, AND Because I CHOSE TO inform Counsel of THEM Reading my Legal PAPER'S, I WAS "Physically ASSAULTED" TWICE (while Handcuffed and SHACKLED). THAT MATTER I DON'T BELIEVE SHOULD BE ADDRESSED AT his TIME DUE TO my PENDING #25. million LAWSUIT. I will STATE IN REFERENCE TO ASSAULT, THAT TWO individual's HAVE provided a sworn statement as TO comment's MADE, prior TO ASSAULT THAT prove it was "PREMEDITATED".

DUE TO MY LACK OF KNOWLEDGE IN THE LAW, AND THE FACT THAT my Counsel Lopez CLEARLY Failed TO REPRESENT ME EFFECTIVELY AND ADEQUATELY, I HAVE SINCE Filed numerous motion(s) WITH NOT ONLY THE U.S. DISTRICT Court IN FLORIDA, But THE A.U.S.A. DEBRA STUART, AND THE U.S. MARSHAL's OFFICE, AS well AS AN "INEFFECTIVE ASSISTANCE OF Counsel" Claim AGAINST MR. LOPEZ.

I FILED A motion TO challenge/REVIEW Lower Court's Ruling IN my CASE WITH THE Honorable CLERK OF court, CLARENCE MADDOX, I Filed A motion For THE RETURN OF "ILLEGALLY SEIZED" property WITH THE U.S. DISTRICT court. I've ALSO notified THE Court's OF THE HARASSMENT, and THE STALKING OF MY WIFE By THE U.S. MARSHAL's IN AN ATTEMPT TO GET ME TO END MY CIVIL ACTION. I've Filed paper's IN South Carolina IN REFERENCE TO THEM intentionally INTERFERING WITH my mail, FAILURE TO GIVE me medical Treatment For MY Broken NOSE, AND my

DISLOCATED (RT) RIGHT SHOULDER, WHICH I RECEIVED AS A RESULT OF SAID ASSAULT BY MARSHAL'S.

I've FILED PAPER'S PROVING A COVER-UP TO PREVENT ME FROM GETTING MEDICAL TREATMENT, EVEN TO THE EXTENT OF MAKING RECORDS DISAPPEAR (BUT NOT BEFORE I COULD MANAGE TO GET A COPY). I've FILED MOTION(S) PROVING MY ARREST WARRANT WAS ALTERED AND THAT THE HONORABLE G. ROSS ANDERSON COMMITTED PERJURY ON THE BENCH WHEN HE STATED "I SIGNED YOUR WARRANT". I PRESENTED HIM WITH BOTH COPY, OF THE ORIGINAL (WHICH THEY DIDN'T REALIZE I STILL HAD) AND THE ALTERED ONE. I PROVED THAT MY WARRANT WAS NEVER SIGNED BY A U.S. MAGISTRATE JUDGE AS IT CLAIMS, AND THAT THE PERSON WHO SIGNED THE WARRANT, ATTEMPTED TO FORGE THE SIGNATURE OF THE HONORABLE MAGISTRATE WILLIAM CATO JR. I ALSO HAVE PROOF THAT HON. MAGISTRATE CATO SIGNS ALL HIS OWN ARREST WARRANTS. I ALSO FILED A MOTION TO DISMISS MY VIOLATION CHARGE(S) ON THE GROUNDS OF "PROSECUTORIAL MISCONDUCT" FOR CONSPIRING WITH OTHER JUDICIAL OFFICER'S TO ALTER SAID WARRANT, AND ALLOW PERJURED TESTIMONY BY U.S P.O. LEE NEWTON FROM GREENVILLE, SOUTH CAROLINA.

I BEG THIS HONORABLE COURT TO INVOKE , IT'S JUDICIAL AUTHORITY AND TO INTERVENE IMMEDIATELY IN THIS MATTER. MY WIFE LIVES IN FEAR NOW BECAUSE OF THE HARASSMENT FROM THE GOVERNMENT MARSHAL'S SHE'S BEEN TERMINATED FROM (3) THREE DIFFERENT JOBS (INCLUDING ONE WORKING FOR THE GOVERNMENT AT A MILITARY AIRPLANE PARTS COMPANY IN BOCA RATON FLORIDA CALLED AEES). THEY CAN HARASS, AND INTIMIDATE ME ALL THEY WANT, AND I WON'T BACK DOWN! I PLEAD WITH THIS COURT FOR JUSTICE!

FOR US TO BE GIVEN THE SAME RIGHTS AND PROTECTION FROM THE UNLAWFUL AND INTENTIONAL HARASSMENT BY THE GOVERNMENT.

THE COURT'S HAVEN'T RULED ON MY MOTION(S), ESPECIALLY THE MOTIONS IN FLORIDA CAUSE IF THEY RULED THAT MY DRIVER'S LICENSE IS A "FRUIT OF

PAGE (5) OF (6)

POISONOUS TREE)" THEN THEY WOULD BE FORCED TO SAY MY TRANSFER FROM SOUTH FLORIDA TO SOUTH CAROLINA WAS ILLEGAL. I HAVE WRITTEN TO THE U.S. JUSTICE DEPT., THE INSPECTOR GENERAL'S OFFICE, THE DISTRICT COURTS, AND ALSO THE MEDIA IN SOUTH FLORIDA. SADLY ENOUGH, IT APPEARS THAT THE MEDIA IS THE ONLY ONE'S INTERESTED IN PROTECTION OF MY RIGHTS AS A CITIZEN. I'VE GOT EVIDENCE OF SUCH CORRUPTION IN THE FEDERAL SYSTEM IN SOUTH CAROLINA, THAT IS SCARY TO EVEN TRY TO COMPREHEND IF THEY WOULD DO SOOO MUCH TO MY COVER-UP MY CASE, AND ALTER DOCUMENT(S) IN MY CASE, AND ALLOW "ILLEGALLY SEIZED" PROPERTY AND PERJURED TESTIMONY TO WIN A CONVICTION ON A "VIOLATION OF SUPERVISED RELEASE", WHERE THE ONLY VIOLATION(S) WERE MOVING WITHOUT NOTICE, AND FAILURE TO SUBMIT (2) MONTHLY REPORTS, WHAT EXTENT WILL THE GOV'T GO TO, TO GET A MORE SERIOUS OFFENSE!

I PRAY THAT THIS HONORABLE COURT REVIEW THESE MATTER'S FULLY AND TAKE WHATEVER ACTION(S) NECESSARY TO PREVENT THIS FROM EVER HAPPENNING AGAIN TO A CITIZEN OF A COUNTRY BASED & FOUNDED ON THE BILL OF RIGHTS! I END WITH THIS QUOTE

"THE [FEDERAL] PROSECUTOR HAS MORE CONTROL OVER LIFE, LIBERTY AND REPUTATION THAN ANY OTHER PERSON IN AMERICA".

FORMER ATTORNEY GENERAL AND SUPREME COURT
JUSTICE ROBERT H. JACKSON (1940)
POST-GAZETTE ISSUE (1998)

P.S. I WAS GIVEN A (1) YEAR SENTENCE,
THE MAX CAUSE I CHOSE TO STAND
UP FOR MY RIGHTS. I HAVE
DOCUMENTED PROOF IF THIS COURT
WISHES TO SEE IT. I'M DUE TO BE
TRANSFERRED TO MIAMI FLORIDA TO
DO MY REMAINING (7) MONTHS.

Sincerely yours,

Randy Anthony Weaver
RANDY ANTHONY WEAVER
950 CALIFORNIA AVE
SPARTANBURG, S.C. 29303

PAGE (6) OF (6)

October 3, 2000

Honorable Judge G. Ross Anderson, Jr.
Federal District Court
Anderson, South Carolina

RE: Case: CR-6: 96-96-1, USA vs. Randy A. Weaver

Dear Honorable Judge Anderson, Jr.

This letter is to once again intervene on behalf of Mr. Weaver. Due to financial situations I won't be able to attend his hearing and address this court. I am begging your court for leniency towards Mr. Weaver. Mr. Weaver is a great person, hard worker, friendly and caring. He was working very hard to achieve his dreams and goals. He is not a violent person, and everyone that knows Mr. Weaver personally can testify on this.

Your Honor, under the appropriate treatment and counseling Randy can strengthen the life he led in Florida. Being close to his friends, and fiancée (me), gives him peace, and desire to continue the fight to achieve his goals. Prison time, or supervisory release in South Carolina might set him back in the great progress he has achieved since living in Florida. His life, friends, and fiancée are in Florida. Please consider all option besides incarceration.

The situation with the US Marshall deputies is not how the deputies are making it seem. It's a very complicated situation since they violated his civil rights and now are trying to justify their unprofessional and unbecoming behavior towards Mr. Weaver. Please disregard any comments or reports they give without giving Mr. Weaver a chance to refute their allegations.

Enclosed find my first letter to this court. I am enclosing it in case it got misplaced the first couple of times I mailed it.

Once again I beg your court for leniency on behalf of Mr. Weaver. Thank you for your consideration. I appreciate your time.


Honestly and Sincerely,

Lissette Diaz

Enclosed

Judge Anderson:

Honorable Judge Anderson. I humble + respectfully
address this letter to you to speak on behalf of
Randy Weaver. He was convicted of threatening the
life of the president. He will be in your court for
a violation of superisory release.

Judge Anderson. I met Randy in October 1999, and
we started to know eachother and by late december
we were a couple by february 2000, Randy
proposed to me and I accepted. Judge Randy
is a hard working man, he was employed by
Green monkey, and Gibraltar Sportsbar full time
on both. He is a very compasionate and helpful
person. Beginning of feb. I was lost my job and
Randy made himself financially responsible of all
my bills so I could look for a job, he even took
a loan so my bills were paid. My aunt is a
single mother and everytime we will be over
visiting her he would start fixing things for
her at no charge. He is a very generous man,
who would lend a hand to whoever needs one.
He is a person that made me believe in happily
ever after, that he shared his vision of a family
with me showing me that with love we can make
it, he restored my faith in marriage, love and

I can honestly say that the time he lived in Florida was fructicious since he accomplished so much in the year he was here, he made strong friendships, good relationship with his landlord and employers. He was never violent to me or anyone I know. Yes we had our disagreements and fights and told each other things but that is part of being a couple and ~~to different~~ communication. In reference ~~to~~ the ~~threat~~ threat he made against me, he knew he will never hurt me or my family, What concerned me was his past and I wanted to know about it. Honestly Judge Anderson. I threaten Randy first, so we are both ~~guilty of the same sin.~~ ~~He~~

He recognized that he needed counseling to help him express his feelings, I am able to admit that since none of us had health insu. and the sessions were expensive I convinced him to ~~save~~ for a car and to wait for his health benefits to start on July 1.

Honorable Judge ~~Anderson~~ I please request ~~beg,~~ Clemency with Randy."

The situation with the marshall happened as follows:

When the marshall interview me after Randy's Arraignment, the marshall James Meehan said ~~want to~~ Randy's ...

That made me very upset, that night they go and searched Randy's room and took all his papers, the only papers left were the dog papers. They took his computer disketts, brief case, wall calendar, they wanted to take the computer but the landlord said no that it was her property. They went without a warrant to search and seized the property. Randy was paying rent the same as the second gentleman present in the house, had a lock in the door that only him + the landlord had keys, so third party consent is not acceptable. The marshalls then on the next court date, harass him, trying to make him loose his cool. He was shackled, and they treated him like he was a murderer. Then they assaulted him, breaking and fracturing bones, then they are trying to justify the beating they gave him by saying that he "tried" to spit at the and head butt at one of them. Major factor here is that the assaults took place in the hallway outside Judge Snow courtroom, Randy was shackled and defenseless when they assaulted him. They didn't allowed me to see him the whole time he was in Florida. His F.P.D. did not want to see him either. Now the marshalls are trying to pass the injuries as old injuries. The marshalls did not indicted Randy of nothing, and the threats they

Mr. Newton stood in front of Judge Catoe and lied when he said that Randy had an indictment in Florida. Randy has no pending charges.

My concern Judge is that these gentleman are passing judgement and sentence to persons with authority and they viciously and with malice prosecute these person with half truths and facts. They are "developing" the case by unprofessional and unhumanly add charges to Randy and send him to jail. These marshall is mocking the justice system, thinking that his opinions is what accounts.

Judge another concern and petition is that to please dismiss Lee Newton as Randy's PO and that another one can be assigned. I was appalled and sad that Mr. Newton denied a visitation pass to go a see a mother before deaths and that at the death of that person a couple of weeks later he will still denied a pass, knowingly of the defendant past with his mother and he denied him the opportunity to make peace and say goodbye. I believed that Probation Officers are a key to help convicts re enter society and continue a straight path out of trouble, obviously Mr. Newton is too busy to do it, and too arrogant to foresee how it affects his client.

By experience I know how important that visit to make peace with a parent is because my dad went

to develop relationships with them. They didn't care until my grandfather was diagnosed with cancer he then made a point of make amends and he asked my dad for forgiveness for understanding. He died and part of my dad bitterness went away, the part that remained was the resentment against his mother for all the abuse he suffered at her hands during childhood. When he was able to forgive his mother my dad was able to let go of the past and overcome that. I am proud that Randy against all odds he was able to work hard and accomplish so many things in such a little time in florida. He needs counseling and some anti-depressant but he

Please Judge sending Randy to do more time will continue the vicious cycle. Prison time will not help ~~still by the time to~~ ~~comes out~~ your honor, he is very decent and hard working man that made a decision under pain disappointment ~~not~~ because he ~~didn't~~ has an authority problem. I beg this court for clemency and to ~~consider~~ all the factors not only the ones they want you to see. Thank you for your consideration

                    sincerely,
                    Lissette Diaz-Weaver

                    David Stone
                    98..83-236

" <u>ATTACHMENT SEVEN</u> "


<u>COPIES OF LETTER'S FROM APPELLATE COUNSEL.</u>


( see footnote # 24)


**PLAINTIFF'S ATTACHMENT SEVEN**



**MARK**
**GRAHAM**
**HANSON**
ATTORNEY AT LAW

2530 S.W. Third Avenue
Suite 102
Miami, FL 33129-2034
Telephone (305) 285-0816

February 1, 2003

Mr. Randy A. Weaver
Register No. 02903-071
Federal Correctional Institution
P.O. Box 779800
Miami, FL 33177-9800

Re:    United States v. Randy Weaver
U.S. District Court Case No. 01-6069-Cr-Roettger
U.S. Court of Appeals Case No. 02-14981-F

Dear Mr. Weaver:

I have scheduled a visit with you for this coming Friday, February 7, and I look forward to meeting with you then.

I still have not received the transcripts of your trial and sentencing hearing, and the docket sheet still does not show that any of these transcripts have been filed yet. I have sent a letter to the court reporter to ask about these transcripts, but I have not received any response yet.

Sincerely,

Mark Graham Hanson

" <u>ATTACHMENT EIGHT</u> "


<u>COPY OF TRANSCRIPT ORDER FORM FILED BY PLAINTIFF</u>.


( see footnote # 25)


PLAINTIFF'S ATTACHMENT EIGHT

# ELEVENTH CIRCUIT TRANSCRIPT INFORMATION FORM

## PART I.                    TRANSCRIPT ORDER INFORMATION

*Appellant to complete and file with the District Court Clerk within 10 days of the filing of the notice of appeal in all cases, including those in which there was no hearing or for which no transcript is ordered.*

Short Case Style: _UNITED STATES OF AMERICA_        vs _RANDY A. WEAVER_

District Court No.: _01-6069-CR-ROETTGER_ Date Notice of Appeal Filed: _Aug 29, 2002_ Court of Appeals No.: _____
                                                                                        (If Available)

CHOOSE ONE:   ☐ No hearing   ☐ No transcript is required for appeal purposes   ☑ All necessary transcript(s) on file
                     ☑ I AM ORDERING A TRANSCRIPT OF THE FOLLOWING PROCEEDINGS:

*Check appropriate box(es) and provide all information requested:*

|  | HEARING DATE(S) | JUDGE/MAGISTRATE | COURT REPORTER NAME(S) |
|---|---|---|---|
| ☑ Pre-Trial Proceedings | MAY 4, 2001 / MAY 9, 2001 | SNOW / SELTZER | UNKNOWN |
| ☑ Trial | JUNE 10-13, 2002 | NORMAN ROETTGER | UNKNOWN |
| ☑ Sentence | AUGUST 22, 2002 | NORMAN ROETTGER | - UNKNOWN |
| ☑ Other | MAY 23, 2001 | LURANA SNOW | UNKNOWN |
|  | SEPT 26, 2001 | LURANA SNOW | UNKNOWN |

## METHOD OF PAYMENT:

☐   I CERTIFY THAT I HAVE CONTACTED THE COURT REPORTER(S) AND HAVE MADE SATISFACTORY ARRANGEMENTS WITH THE COURT REPORTER(S) FOR PAYING THE COST OF THE TRANSCRIPT.

☐   CRIMINAL JUSTICE ACT. Attached for submission to District Judge/Magistrate is my completed CJA Form 24 requesting authorization for government payment of transcript. [A transcript of the following proceedings will be provided ONLY IF SPECIFICALLY AUTHORIZED in Item 13 on CJA Form 24: Voir Dire; Opening and Closing Statements of Prosecution and Defense; Prosecution Rebuttal; Jury Instructions.]

Ordering Counsel/Party: _RANDY ANTHONY WEAVER - DEFENDANT._

Name of Firm: _____

Street Address/P.O. Box: _ID# 92903-071 F.D.C. MIAMI P.O. BOX 019120_

City/State/Zip Code: _MIAMI, FLORIDA 33101-9120_        Phone No. : _____

*I certify that I have filed the original (Yellow page) with the District Court Clerk, sent the Pink and Green pages to the appropriate Court Reporter(s) if ordering a transcript, and sent a photocopy to the Court of Appeals Clerk and to all parties.*

DATE: _9/10/02_  SIGNED: _Randy Anthony Weaver_     Attorney for: _____

## PART II.              COURT REPORTER ACKNOWLEDGMENT

*Court Reporter to complete and file Pink page with the District Court Clerk within 10 days of receipt. The Court Reporter shall send a photocopy to the Court of Appeals Clerk and to all parties, and retain the Green page to provide notification when transcript filed.*

Date Transcript Order received: _____
☐ Satisfactory arrangements for paying the cost of the transcript were completed on: _____
☐ Satisfactory arrangements for paying the cost of the transcript have not been made.

No. of hearing days: _____   Estimated no. of transcript pages: _____   Estimated filing date: _____

DATE: _____   SIGNED: _____   Phone No. : _____

NOTE: The transcript is due to be filed within 30 days of the date satisfactory arrangements for paying the cost of the transcript were completed unless the Court Reporter obtains an extension of time to file the transcript.

## PART III.   NOTIFICATION THAT TRANSCRIPT HAS BEEN FILED IN DISTRICT COURT

*Court Reporter to complete and file Green page with the District Court Clerk on date of filing transcript in District Court. The Court Reporter shall send a photocopy of the completed Green page to the Court of Appeals Clerk on the same date.*

This is to certify that the transcript has been completed and filed with the district court on (date): _____

Actual No. of Volumes and Hearing Dates: _____

Date: _____        Signature of Court Reporter: _____

*U.S. GPO: 2000-534-890/00230*

" <u>ATTACHMENT NINE</u> "


COPY OF PAGE THREE OF DEFENDANT'S MOTION OPPOSING SECOND
AMENDED COMPLAINT.


( see footnote # 27)


PLAINTIFF'S ATTACHMENT NINE

pending resolution of the related criminal matter.[4]

5.      On June 13, 2002 plaintiff was found guilty of assaulting, impeding, or interfering with Michael Gloetzner in connection with the June 28, 2000 incident at the USMS cellblock.

6.      On July 3, 2002 Magistrate Judge Sorrentino issued a Report recommending that the stay be lifted and that the case be re-opened as to Meehan and Gloetzner regarding the June 28, 2000, USMS cellblock incident.[5]

7.      On October 18, 2002, the Defendants Meehan and Gloetzner filed an Answer to the Amended Complaint.[6]

9.      On October 23, 2002, the Court entered an Order scheduling pretrial proceedings which, in part, required that "[a]ll motions to join additional parties or amend the pleadings shall be filed by January 3, 2003."[7]

10.     On December 20, 2002, the Defendants Meehan and Gloetzner filed a Motion for Summary Judgment (based in part upon the defense of qualified immunity) and a Motion for Stay of Discovery.[8]

_____

[4]See Document # 21 (Preliminary Report) on file in these proceedings.

[5]See Document # 32 (Report) on file in these proceedings. United States District Court Judge Paul Huck issued an order adopting the Magistrate's recommendation on July 19, 2002. See Document # 38 (Order adopting Preliminary Report) on file in these proceedings.

[6]See Document # 53 (Answer) on file in these proceedings.

[7]See Document # 54 (Order scheduling pretrial proceedings) on file in these proceedings.

[8]In pertinent part, the Defendants argued the following:

Because qualified immunity is a defense not only from liability, but also from suit, it is "important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002), rehearing and rehearing en Banc denied by *Lee v. Ferraro*, 57 Fed.Appx. 505, F.3d , 2002 WL 1049396 (11th Cir. 2002)(Citing *GJR Invs., Inc. v. County of Escambia*, 132 F.3f 1359, 1370 (11th Cir. 1998)).

When the qualified immunity defense is raised, the district court should stay discovery until the immunity issues are resolved. *Cottone v. Jenne*, 326 F.3d (11th Cir. 1992)

Discovery imposes cost on the litigants from who the discovery is sought, as well as on

3