

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 01-325-CIV HUCK/White

**RANDY WEAVER,**

        **Plaintiff,**

v.

**JAMES MEEHAN, et al.,**

        **Defendants.**
_____/

### DEFENDANT'S PRE-TRIAL STATEMENT

COMES NOW the Defendants, by and through the undersigned counsel, pursuant to the Court's order to file this Pre-Trial Statement as follow:

#### A. Statement of the Case

In the viable portion of his Amended Complaint, Weaver alleges that two Deputy United States Marshals (Meehan and Gloetzner) violated his constitutional rights through the use of excessive force on June 28, 2000 when Gloetzner assaulted him (and Meehan failed to intervene) during his detention at the Federal courthouse in Fort Lauderdale, Florida.[1] Plaintiff alleges that he suffered lacerations, a nose fracture, and a dislocated shoulder.

#### B. Written Statement of Facts

1.    On February 28, 2001, Plaintiff, Randy A. Weaver, filed an Amended *pro se Bivens* Complaint against *inter alia*, Deputy United States Marshals (DUSM) James Meehan and Michael

---

[1] On July 17, 2001, U.S. Magistrate Judge Charlene Sorrentino issued a Preliminary Report, recommending that the *Bivens* claims arising out of events alleged to have occurred on June 22, 2000 involving Plaintiff's arrest at his residence be dismissed for failure to state a claim upon which relief may be granted. (See Document # 21 (Preliminary Report) on file in these proceedings.)
On July 27, 2001, United States District Court Judge Paul Huck issued an order adopting the Magistrate's recommendation. (See Document # 23 (Order adopting Preliminary Report) on file in these proceedings.)

Gloetzner, United States Marshals Service (USMS), Southern District of Florida. Weaver alleged that on June 22, 2000, the DUSMs violated his constitutional rights by entering his dwelling, pointing a gun at him, and illegally searching for and seizing his personal property.[2] He further alleged that on June 28, 2000 at the Federal courthouse in Fort Lauderdale, Florida, DUSM Gloetzner assaulted him by striking him in the face with his fist and slamming his face into the holding cell bars. Plaintiff alleges that he suffered lacerations, a nose fracture, and a dislocated shoulder. He seeks damages from DUSM Meehan based on his allegation that Meehan failed to intervene in Gloetzner's alleged use of force.[3]

2.   On April 3, 2001, the Plaintiff was federally indicted on one count of forcibly assaulting, resisting, opposing, impeding and interfering with Gloetzner while he was engaged in his official duties on June 28, 2000.[4]

3.   On June 13, 2002 plaintiff was found guilty of forcefully assaulting, impeding, or interfering with Michael Gloetzner in connection with the June 28, 2000, incident at the USMS cellblock.[5]

4.   The circumstances of the June 28, 2000 cellblock incident are as follows: On June 28, 2000, Meehan and Gloetzner entered the United States Marshals Service cellblock in order to escort Weaver to a hearing before United States Magistrate Judge Lurana Snow. They immediately noticed that Weaver appeared agitated and that he acted aggressively toward them. They placed Weaver in the cell adjacent to Magistrate Judge Snow's courtroom until the time of his hearing.

---

[2] Plaintiff was arrested on June 22, 2000 pursuant to a federal arrest warrant from the District of South Carolina for violating his federal probation. He was on probation from a 1996 conviction and sentence for threatening the President of the United States.

[3] Source of Evidence, Document # 4 (Plaintiff's Amended *Bivens* Complaint) on file in these proceedings.

[4] Source of Evidence, a copy of indictment in the proceedings filed before this Honorable Court styled *United States v. Weaver*, 01-6069 CR ROETTGER.

[5] Source of Evidence, Copy of jury verdict in the proceedings filed before this Honorable Court styled *United States v. Weaver*, 01-6069 CR ROETTGER.

Weaver became even more agitated while in this cell.[6]

5.  When the time arrived for Weaver's hearing, Meehan and Gloetzner transported Weaver from the cell to the courtroom. Gloetzner told Weaver not to stand up or move about the courtroom unless Magistrate Judge Snow told him to do so. Weaver told Gloetzner to "shut the fuck up." The hearing before Magistrate Judge Snow was conducted uneventfully.[7]

6.  At the conclusion of the hearing, however, Gloetzner was attempting to place handcuffs on Weaver outside the courtroom. As Gloetzner put the handcuff on Weaver's left wrist, (Weaver was facing away from Gloetzner) Weaver attempted to strike Gloetzner with his right elbow. Weaver then spun around and attempted to hit Gloetzner with his right fist. Gloetzner ducked under his fist and pushed Weaver against the wall he was facing. Weaver's feet got twisted in the leg-irons, causing him to fall against the wall, where Weaver hit his head on a wooden chair. Meehan and Gloetzner subdued Weaver and were eventually able to apply the second handcuff to his right wrist.[8]

7.  As Gloetzner and Meehan were escorting Weaver back to the cellblock, they placed him in an elevator. Weaver told Gloetzner that he thought he was a "pussy" and that if the handcuffs were removed he would "kick [Gloetzner's] ass." Additionally, Weaver told Gloetzner that, if he did not believe him that he should look at his criminal history, because he had "beat the shit" out of officers bigger than Gloetzner in the past. Gloetzner and Meehan were already familiar with Weaver's extensive and violent criminal history due to the investigation they conducted in connection with plaintiff's arrest on June 20, 2000.[9] Additionally, Gloetzner and Meehan knew that

---

[6]Source of Evidence, testimony of James Meehan and Michel Gloetzner.

[7]Source of Evidence, testimony of James Meehan and Michel Gloetzner.

[8]Source of Evidence, testimony of James Meehan and Michel Gloetzner.

[9]Weaver's criminal history included the following arrests: two assaults and batteries, five burglary/larcenies, one firearms violation, three rapes/sexual assaults, one threatening the President of the United States, two escapes, five resisting arrests, one aggravated harassment, one bribing a witness, and two criminal domestic violence charges.

Weaver had an outstanding arrest warrant in the State of South Carolina for assaulting a police officer.[10]

8.   When Weaver, Gloetzner and Meehan arrived on the third floor, Gloetzner exited the elevator first, followed by Weaver, then by Meehan. As they were walking down the hallway towards the cellblock, Weaver stopped, and refused to walk any further. At that time, Meehan took Weaver's left arm and Gloetzner took his right arm. Weaver jerked his right arm, causing Gloetzner to come face to face with him. Weaver then spit in Gloetzer's face. While Gloetzner was wiping Weaver's saliva out of his eyes, Weaver attempted to butt Gloetzner with his head. Gloetzner then grabbed Weaver's arm and forced him up against the wall in an effort to prevent Weaver from spitting on him again. Meeham pinned him in that position until the cellblock door opened. Meehan then escorted Weaver into the cellblock and placed him in the cell with his hands cuffed behind his back and in leg-irons.[11]

9.   Meehan escorted Gloetzner to the duty nurse, Susan Crimmins, in the Fort Lauderdale federal building. She flushed Gloetzner's eyes and advised him to seek medical attention from his primary care doctor for possible infectious diseases.[12]

10.  Although Weaver did not request medical attention himself, Gloetzner and Meehan requested that the duty nurse to examine him. Meehan escorted the duty nurse to the cellblock where Weaver had been placed. At that time, Meehan found Weaver had moved his cuffed hands from behind his back, under his feet, to the front of his body. Because there was a slight trickle of blood coming from one side of Weaver's nose, the duty nurse (Susan Crimmins) treated him for a bloody

---

[10]Source of Evidence, testimony of James Meehan and Michel Gloetzner.

[11]Source of Evidence, testimony of James Meehan and Michel Gloetzner.

[12]Source of Evidence, testimony of James Meehan, Michel Gloetzner, and Susan Crimmins.

nose and for shoulder pain.[13]

11. On June 28, 2002, Susan Crimmins, a Registered Nurse, found Weaver sitting in a chair with his hands and feet cuffed. Thereafter, Crimmins examined Weaver and noted a small amount of blood under Weaver's nose and on top of his lip. Crimmins treated Weaver with peroxide and water. Crimmins observed no swelling or bruises on Weaver's face, nor any bleeding in Weaver's mouth. Crimmins noted that Weaver appeared to be alert, he spoke clearly, his pupils were of equal size and reacted to light, and he was able to move his arms and legs as much as his handcuffs allowed. Crimmins noted that Weaver complained of pain in his right shoulder, but Crimmins did not notice any swelling or bruising in that area. Even though Weaver was in handcuffs, Crimmins was able to assess the range of motion for his right shoulder. Crimmins asked Weaver to raise his hands above his head, down to his waist, and to the right and left sides. Weaver was able to perform each of these motions without any difficulty or signs of pain. Although Weaver did not appear to have suffered any serious injuries, Crimmins recommended that follow up x-rays be performed on Weaver's nose and shoulder.[14]

12. On June 29, 2000, Weaver reported to routine sick call at the Federal Detention Center in Miami, Florida (FDC-Miami) where he was examined by Physician's Assistant Pablo Carabeo. According to Carabeo, Weaver claimed "to have been injured by U.S. Marshals when he went to court. Carabeo noted Weaver's temperature as normal ("98.6") and that his nose had "moderate swelling." Carabeo also noted that there was no bruising. Weaver did not complain of, nor did he manifest any other injury. Nevertheless, as a precaution, Carabeo ordered X-rays to be taken on a routine basis and advised Weaver to return to sick call as needed.[15]

---

[13]Source of Evidence, testimony of James Meehan, Michel Gloetzner, and Susan Crimmins.

[14]Source of Evidence, testimony of Susan Crimmins.

[15]Source of Evidence, testimony of Pablo Carabeo and BOP (FDC) records.

13.     On July 5, 2000, Weaver began his transfer to South Carolina.[16]

14.     On August 17, 2000, Weaver was examined at the Spartanburg Ear, Nose, and Throat Neck Surgery Clinic, P.A., Spartanburg, South Carolina where he was diagnosed as having deviated septum.[17]

15.     On February 12, 2001, Weaver's nasal area and right shoulder were subjected to radiological examination by BOP medial staff. In pertinent part, the Radiological Consultation Report thereof, dated February 22, 2001, provides as follows:

> NASAL BONES:   The nasal bones are intact as is the anterior nasal spine of the maxilla. No fracture is identified. The bony septum is midline.
> IMPRESSION:    Negative examination of the nasal bone.
> RIGHT SHOULDER:   There is mild deformity of the distal clavicle from an old healed fracture. The remaining b[ones] are intact. The joint spaces are of normal caliber. The soft tissues are unremarkable.
> IMPRESSION:    No acute fracture.[18]

16.     On November 27, 2001, Weaver underwent a medical procedure to repair separation of the right acromioclavicular joint at the Cedars Medical Center, Miami, Florida.[19]

17.     On or about September 25, 1998, in Greenville County, in the District of South Carolina, the Plaintiff, Randy Weaver, did assault and batter a law enforcement while resisting arrest. This evidence is offered pursuant to Rule 404(b), Federal Rule of Evidence.[20]

---

[16] Source of Evidence: BOP (FDC) records.

[17] Source of Evidence, records from Spartanburg Ear, Nose, and Throat Neck Surgery Clinic, P.A., Spartanburg, South Carolina, along with expert opinion testimony from Dr. Juan Monerrate, MD, Dr. Elliot Lang, MD, and Pablo Carabeo.

[18] Source of Evidence: BOP (FCI) records along with expert opinion and/or treating physician testimony from Dr. Franklin B. Grossman, MD, Dr. Elliot Lang, MD, and Pablo Carabeo.

[19] Source of Evidence: Cedars Medical Center records along with expert opinion and/or treating physician testimony from Dr. Franklin B. Grossman, MD, Dr. Elliot Lang, MD, and Pablo Carabeo.

[20] Source of Evidence: Testimony of Deputy C.B. Simmons.

18.     On or about July 4, 2000, Plaintiff told his fellow inmate that his injuries were self inflicted to support a civil lawsuit.   Plaintiff also told this inmate that when one of the deputies attempted to help him, a struggle ensued.[21]

19.     On or about September 12, 2000, Plaintiff told his fellow inmate that he would "get those two deputies, no matter what."[22]

### C.  Defendant's List of Trial Exhibits

a.  Printout of inquiry of the Warrant Information Network and National Crime Information Center data base.

b.  Medical records maintained by Federal Bureau of Prisons regarding Randy Weaver.

c.  Medical records maintained by Federal Detention Center regarding Randy Weaver.

d.  Medical records maintained by the Spartanburg Ear, Nose, and Throat Neck Surgery Clinic, P.A., regarding Randy Weaver.

e.  US Public Health Service, Unusual Incident Report dated June 28, 2000.

f.  Medical records maintained by the Cedars Medical Center regarding Randy Weaver.

g.  Photograph of Randy Weaver's face taken shortly after the alleged incident on June 28, 2000.

h.  Photographs of Federal Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida.

### D.  Defendant's List of Witnesses

1.  **James Meehan**
    United States Marshal's Service
    301 Green Street
    Fayetteville, N.C. 28302

2.  **Michael Gloetzner**
    United States Marshal's Service
    299 East Broward Boulevard, Room 312
    Fort Lauderdale, Florida 33301

---

[21] Source of Evidence: Testimony of Harold D. Neal.

[22] Source of Evidence: Testimony of James W. Gurgis.

7

3.  **Gary Grant**
    United States Marshal's Service
    299 East Broward Boulevard, Room 312
    Fort Lauderdale, Florida 33301

4.  **Johnny Walker**
    United States Marshal's Service
    299 East Broward Boulevard, Room 312
    Fort Lauderdale, Florida 33301

5.  **Susan Crimmins**
    Registered Nurse, Medical Unit
    299 East Broward Boulevard, Room 312
    Fort Lauderdale, Florida 33301

6.  **Spartanburg Ear, Nose, and Throat Neck Surgery Clinic, P.A.**
    397 Serpentine Drive
    Spartanburg, South Carolina 29303

7.  **Cedars Medical Center**
    1400 N.W. 12th Avenue
    Miami, Florida 33136

8.  **Dr. Juan Monerrate, MD**
    Medical Officer, FCI-Miami
    15801 S.W. 137th Avenue
    Miami, Florida

9.  **Dr. Franklin B. Grossman, MD**
    Medical Officer, FCI-Miami
    15801 S.W. 137th Avenue
    Miami, Florida

10. **Pablo Carabeo, P.A.**
    Federal Detention Center, Miami
    33 N.E. 4th Street, Medical Center
    Miami, Florida 33132

11. **Dr. Elliot Lang, MD**
    9299 S.W. 152nd Street
    Miami, Florida 33136

12. **Harold D. Neal**, BOP #49721-019

13. **James W. Gurgis**, BOP #04292-025

14. **Deputy C.B. Simmons**
    Greenville County Sheriff's Office
    Greenville, South Carolina

The Defendant reserves the right to modify this witness as needed within the limits of the law and pertinent order of the Court.

### E. Summary of Testimony of Defendant's Witnesses

The substance of the testimony of the Defendant's several witnesses are detailed above in Section **B. Written Statement of Facts**.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By _____
CHARLES S. WHITE
Assistant United States Attorney
Fla. Bar No. 394981
99 N.E. 4th Street, Suite 322
Miami, Florida 33131
Tel. (305) 961-9286
Fax. (305) 530-7139

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was furnished by U.S. Mail on May 12, 2003 to Randy Anthony Weaver, Plaintiff *pro se*, Reg. #92903-071, Federal Correctional Institution, P.O. Box 779800, Miami, Florida 33177.

By _____